14598

COOK v. METROPOLITAN LIFE INSURANCE COMPANY

(194 S. E., 636)

December, 1935.

*Messrs. Elliott, McLain, Wardlaw & Elliott,* for appellant,

*Messrs. E. J. Best* and *Charles F. Cooper,* for respondent,

January 7, 1938.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

On June 22, 1904, the defendant issued to the plaintiff, when he was seven years of age, what is styled an industrial policy, insuring his life in the sum of $240.00. The policy, also referred to as an infantile endowment, provided for the payment of a premium of 10 cents per week. The policy continued in force until May 8, 1933, when it finally lapsed for nonpayment of premiums. But before this date it had lapsed and had been reinstated at least twice, by a premium lien agreement indorsed thereon. The original policy was destroyed by fire, but upon the application of the plaintiff in 1928, a duplicate policy was issued to him.

Possession of this duplicate was obtained from the plaintiff by an agent of the defendant in November, 1934, and this controversy arises from the facts and circumstances

connected with that transaction. When the agent, Mr. Black, secured possession of the policy, it had a paid-up value of $136.00, augmented by dividends, which was a fixed liability of the defendant without further payment of premiums, payable upon the death of the insured.

This action is one based upon fraud and deceit, and the gist of it is found in the following allegations of the complaint:

"That on or about November, 1934, the plaintiff made application to the defendant company to revive and reinstate the aforementioned policy, and at the same time delivered the said policy to the defendant and its agents for the purpose of reviving the same, and at the time of its delivery to the said defendant, the defendant and its agents promised to revive and reinstate said policy of insurance and return the same to the plaintiff.

"That the aforesaid policy, on account of its age, possessed great benefits and advantages to the plaintiff and was of much value to him and to his beneficiaries. That the plaintiff ever since the delivery of said policy to the defendant has made many, various and sundry demands on the defendant for the return to him of said policy of insurance, but the said defendant company and its agents have intentionally, maliciously, willfully and fraudulently declined and refused to give the plaintiff his said policy of insurance as aforesaid."

The defendant pleaded a general denial.

The trial of the case resulted in a verdict in favor of the plaintiff for $5.00, nominal damages, and $256.00 punitive damages.

Upon the conclusion of the testimony the defendant moved for a directed verdict, upon the ground that the testimony failed to show any actionable fraud on the part of the defendant, and contended that the only reasonable inference to be drawn from the testimony "is that the insured voluntarily surrendered a policy of insurance, which was at that time not in force, for the purpose of having it re-

vived; there being no consideration for the promise on the part of the agent to revive the policy; there being no application therefor, and no payment being made therefor, and, therefore, the plaintiff is now in the identical position he was in before the policy was surrendered, and consequently no damage can flow to him."

The County Judge overruled the motion, and from this ruling the defendant appeals.

At the time of the transaction which gave rise to this action, the plaintiff resided at Edgewood, a suburb of the city of Columbia, with his wife, who by a subsequent change was the beneficiary named in the policy, and his children. They held various industrial policies, calling for small weekly premium payments on the lives of several members of the family.

These premiums were collected weekly at the home of the insured, by the defendant's agent, Mr. Black. His debit book contained the numbers of these various insurance policies, and among them was the number of the policy now in suit. On the occasion when the policy in question was delivered to him, all of the policies held by the family had lapsed for nonpayment of premiums, but the agent knew that this policy and at least two others could be revived and reinstated. He called at the home of the insured to solicit the reinstatement of the policies referred to, but he says in his testimony that the policy in question was given to him, not for the purpose of renewal or revival, but that he was specifically instructed to obtain its cash value, if it had any.

The appellant evidently discounts this portion of the agent's testimony, who testified on its behalf, because in the motion for a directed verdict it is urged that the only reasonable inference to be drawn from the evidence is that the policy was surrendered for the purpose of having it revived. The insured, his wife, and his daughter, testified unequivocally that Mr. Black came to their home and persuaded the insured to give up the policy so that he could have it revived; and stated that no cash payment would be required,

but that he would reinstate it by a policy lien agreement. With this understanding, they say, the policy was delivered to him, and he promised to return it within a few days.

All of this occurred some time in November, 1934. The plaintiff testified that he had intended to take the initiative himself and have the policy revived, as he had done before, but when Mr. Black took the matter up with him he relied upon the representations made to him, and intrusted him with the policy for the purpose of reinstating it, by having a lien agreement indorsed on it.

The policy was never revived, and, according to the testimony of the plaintiff, was never returned.

The plaintiff was employed as a boilermaker in the machine shop of the Southern Railway Company at Columbia, and depended upon his wife to attend to his insurance matters. It appears that she was sick, and confined to the house during the months of November and December, 1934, and January and February, 1935. The policy not having been returned, Mrs. Cook, the beneficiary, some time in March, 1935, went to Columbia and called at the office of the defendant for the purpose of making inquiry about it and securing its return. Mr. Roseberry, the company's district manager, was not in, but his stenographer in the office told her that she knew nothing about it, but would take it up with the manager. Thereafter Mrs. Cook visited the office several times for the sole purpose of recovering the policy, but was never able to see Mr. Roseberry, who, she was informed, was either out of the office or was too busy to see her. She related to the office force the circumstances under which Mr. Black had obtained the policy, and demanded its return, but on each occasion she was told that they knew nothing about it, but that the matter would be investigated.

Mrs. Cook made six or eight trips to the local office of the defendant on this business, all of which ended in frustration. Finally, on one of these occasions, when told that Mr. Roseberry was busy, she made a peremptory demand to see him, "regardless of whether he is busy or not." She was

then informed that she could see him in a few minutes, and was shortly admitted to his office. Mrs. Cook then explained to him that the agent, Mr. Black, had obtained this policy in November, 1934, for the purpose of reviving it, and had never returned it. Mr. Roseberry assured her that he knew nothing about it, but requested that she bring her receipt book, and he would write the home office of the company. Later, she says that she again went to the office, and Mr. Roseberry had the number of the policy, and promised to let her hear from him within a week or ten days. She did not hear from him, and again went to the office, but was told that he was out and would not be back until the following week, whereupon, she told the stenographer that it would be useless for her to call any more, and that she was going to take "further steps about it."

Mr. Black, who testified for the defendant, said that the policy was given to him, not for revival, but to see if it had any cash value; that, upon being advised by the local office that it had no cash value, he personally returned it to the insured, at his home, within a week after he received it, and thereafter made no further calls there. This is categorically denied by the insured, who, together with his wife and daughter, assert that Mr. Black never came to their home again for any purpose after he obtained the policy.

Mr. Roseberry, who also was a witness for the defendant, testified that he told Mrs. Cook, upon her visit to his office, at which time she was very much wrought up, that he knew nothing about the policy transaction, and could make no inquiry of Mr. Black because Mr. Black was no longer employed by the defendant. However, the evidence shows that Mr. Black, although then in the employ of another insurance company, still resided in Columbia, and presumptively was either in the possession of the debit book containing the number of this policy, or else had delivered the book to the defendant.

Evidently no ill feeling existed between Mr. Black and the defendant which prevented an inquiry as to the facts,

because, as stated, he was called by the defendant as a witness in this case. Mr. Roseberry further stated that he informed Mrs. Cook that he was very anxious to assist her in the matter, and requested that she bring her premium receipt book so that he could obtain the number of the policy, and that he would be glad to help her to get the policy back; but that she never brought him the book, and that he learned the number of the policy only when the complaint in this action was served. He says that, after his interview with Mrs. Cook, he sent an agent of the company to the home of the plaintiff to obtain the facts in order to secure another duplicate of the policy for the insured. This agent, a Mr. Bayne, stated that he went to the home of the insured, but that Mrs. Cook told him that she had placed the matter in the hands of her attorney. Mrs. Cook denies that this agent visited her home, or that she had any conversation with him.

The fact that the policy in question had a paid-up value of $136.00 did not appear until it was developed from the testimony of the defendant, and it was likewise developed in this testimony that the policy could have been revived.

This action was commenced in July, 1935. The allegations of the complaint substantially state a cause of action for unlawful and fraudulent conversion, but it was tried upon the theory of fraud and deceit.

The appellant contends that no actionable fraud has been proved; that the plaintiff was not deceived in any way; that the plaintiff suffered no damage; and that the facts conclusively show no conduct on the part of the defendant inconsistent with fair and honest dealing. It is said that the insured has lost nothing, has been deprived of nothing, and is in the identical position he was in before.

In *Coleman v. Stevens,* 124 S. C., 8, 117 S. E., 305, 307, the Court approved the following charge to the jury:

"Deceit or fraudulent representation, in order to be actionable, must relate to existing or past facts, and the fact that a promise made in the course of negotiations is never performed does not in and of itself constitute nor evidence

fraud. A mere breach of a contract does not constitute fraud.  *  *  *

"A future promise is not fraudulent, unless such a future promise was part of a general design or plan existing at the time, made as part of a general scheme to induce the signing of a paper or to make one act, as he otherwise would not have acted, to his injury."

Where one promises to do a certain thing, having at the time no intention of keeping his agreement, it is a fraudulent misrepreesntation of a fact, and actionable as such. *Hight v. Richmond Park Imp. Co.,* 47 App. D. C., 518. *Haggerty v. Key,* 100 Okla., 238, 229 P., 548. *Haddaway v. Smith,* Tex. Civ. App., 256 S. W., 965. *Bradley v. Metropolitan Life Ins. Co.,* 162 S. C., 303, 160 S. E., 721.

Fraud may be proved by a number of concurrent or related circumstances.

Viewing the testimony in this case, in the light most favorable to the plaintiff in determining whether the motion for a directed verdict should have been granted, the Court cannot say as a matter of law that the circumstances attending and following the obtaining of insured's policy give rise to only one reasonable inference as to the real object or motive of the parties.

Fraud may be deduced not only from deceptive or false representations, but from facts, incidents, and circumstances which may be trivial in themselves, but decisive in a given case of the fraudulent design. It is a state of mind, dependent on intent, which is provable by circumstantial evidence. *Parham-Thomas-McSwain v. Atlantic Life Insurance Company,* 111 S. C., 37, 96 S. E., 697.

If more than one reasonable inference may be drawn from the evidence, then the question of fraud is for the jury. *Thompson v. Bass,* 167 S. C., 345, 166 S. E., 346.

In this case the agent of the appellant obtained and carried away the only evidence which the respondent had of

his valuable contract with the defendant. In so doing, did he make a fraudulent representation, having at the same time no intention of keeping his agreement? The intent which actuated the appellant in gaining possession of the policy and afterwards failing to return it, if it did so fail, and the question of fraudulent representation, under the testimony, made an issue for the jury and in our opinion was properly submitted to the jury for its decision.

The appellant appeals from the refusal of the trial Judge to grant a new trial upon the ground that the verdict is contrary to the law and the evidence. In view of what we have already said, we think the trial Court committed no error in refusing to set aside the verdict and in denying a new trial.

The defendant also appeals from the order of the trial Court refusing to strike from the complaint, in its fourth paragraph, certain allegations characterizing the conduct of the defendant as being unlawful and fraudulent. We think there is no merit in this contention, and find no error in the trial Court's action in refusing to strike.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.