2471

The STATE, Respondent v. John Ervin MOYD, Appellant.

(468 S.E. (2d) 7)

Court of Appeals

257

*Senior Assistant Appellate Defender Wanda H. Haile,* of *S.C. Office of Appellate Defense,* of Columbia, *for appellant.*

*Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott,* and *Assistant Deputy Attorney General G. Robert Deloach, III,* all of Columbia; and *Solicitor Dudley Saleeby, Jr.,* of Florence, *for respondent.*

Heard Dec. 6, 1995.

Decided Mar. 4, 1996.

SHAW, Judge:

John Ervin Moyd was convicted of driving under suspension (DUS) and driving while under a declaration that he is an habitual traffic offender (HTO). He appeals, claiming the prosecution of both charges violates the Double Jeopardy Clause, and that the trial court should have declared a mistrial due to highly prejudicial testimony by the arresting officer. We affirm.

Moyd was arrested on November 28, 1993, by Trooper James B. Simmons after Simmons apprehended him and determined he was driving under suspension. Moyd was later charged as an HTO after the Department of Transportation notified the solicitor it had earlier declared him to be an habitual traffic offender. Moyd's defense to the charges was necessity based upon his claim that he took over driving after the other occupant of the car became ill and Moyd thought the occupant suffered from food poisoning.

## I.

Moyd first argues the trial court erred in allowing the State to prosecute him on both DUS and HTO, claiming prosecution of both charges violates the Double Jeopardy Clause. Moyd asserts HTO is a lesser offense of DUS. We disagree.

A defendant may be severally indicted and punished for separate offenses without being placed in double jeopardy where a single act consists of two "distinct" offenses. *State v. Walsh,* 300 S.C. 427, 388 S.E. (2d) 777 (1988). In *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed. (2d) 548 (1990), the United States Supreme Court set forth the following analysis for determining whether a subsequent prosecution was barred by the double jeopardy clause. The court had to first apply the traditional test under *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which requires a technical comparison of the elements of the offense for which the defendant was first tried with the elements of the offense in the subsequent prosecution. If the *Blockburger* test revealed the offenses had identical statutory elements or that one was a lesser included offense of the other, then the inquiry must cease and the subsequent prosecution was barred. *Id.* If, however, a subsequent prosecution survived this technical comparison of the elements of the two offenses, the court had to then determine whether the State would prove the entirety of the conduct previously prosecuted to establish an essential element of the offense in the subsequent prosecution. If so, the subsequent prosecution was barred. *Id.* The *Grady v. Corbin* analysis relied on a determination of whether one offense was a "species of lesser-included offense" of the other. *See State v. Wilson,* 311 S.C. 382, 429

S.E. (2d) 453 (1993) (discussing and applying the *Grady v. Corbin* analysis).

*Grady v. Corbin* was overruled, however, in *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed. (2d) 556 (1993). A majority of the United States Supreme Court found *Grady*'s "same conduct" test lacked constitutional roots, and was wholly inconsistent with Supreme Court precedent and "the clear common-law understanding of double jeopardy." *United States v. Dixon*, 113 S.Ct. at 2860. Accordingly, *Grady* is no longer the law, and *Blockburger* remains as the *only* test of double jeopardy for successive prosecutions as well as for multiple punishments in a single prosecution. *See generally* McAninch, *Double Jeopardy: The Basics for Practitioners*, Criminal Practice Law Report, April and May 194 (two parts). In sum, *Grady* had expanded the analysis for determining whether a double jeopardy violation had occurred and allowed such a finding in cases which did not constitute double jeopardy under *Blockburger*'s mechanical comparison of the elements test. *Dixon*, however, represents a narrowing of double jeopardy analysis, and returns the inquiry to the *Blockburger* test as the lone test for determining whether the prosecution violated the Double Jeopardy Clause.

Initially, we note Moyd's counsel agreed that no double jeopardy violation occurred in this case if one applies a "strict element by element test." Counsel proceeded to argue *Grady v. Corbin* requires the court to "get away from the element test and the same conduct test yielded." Therefore, the issue of whether this prosecution is barred under the *Blockburger* test pursuant to *Dixon* was not preserved for appeal.

Assuming the issue is preserved, we find no double jeopardy violation. S.C. Code Ann. § 56-1-460 (Supp. 1994) prohibits a person from "driv[ing] a motor vehicle on any public highway of this State when his license to drive is canceled, suspended, or revoked. . . ." Hence, the elements of the crime are:

(1) driving;
(2) a motor vehicle;
(3) on any public highway of this State;
(4) when the driver's license to drive is canceled, suspended, or revoked.

The State must establish these elements to obtain a conviction for DUS under section 56-1-460.

Article 5 of Title 56 governs habitual offenders in South Carolina. S.C. Code Ann. § 56-1-1020 (Supp. 1994) provides:

> An habitual offender shall mean any person whose record as maintained by the Department of Public Safety shows that he has accumulated the convictions for separate and distinct offenses described in subsections (a), (b) and (c) committed during a three-year period; provided, that where more than one included offense shall be committed within a one-day period such multiple offense shall be treated for the purposes of this article as one offense:

> (a) Three or more convictions, singularly or in combination of any of the following separate and distinct offenses arising out of separate acts:

> (1) Voluntary manslaughter, involuntary manslaughter, reckless homicide resulting from the operation of a motor vehicle;

> (2) Operating or attempting to operate a motor vehicle while under the influence of intoxicating liquor, narcotics, or drugs;

> (3) Driving or operating a motor vehicle in a reckless manner;

> (4) Driving a motor vehicle while his license, permit, or privilege to drive a motor vehicle has been suspended or revoked, except a conviction for driving under suspension for failure to file proof of financial responsibility;

> (5) Any offense punishable as a felony under the motor vehicle laws of this State or any felony in the commission of which a motor vehicle is used;

> (6) Failure of the driver of a motor vehicle involved in any accident resulting in the death or injury of any person to stop close to the scene of such accident and report his identity;

> (b) Ten or more convictions of separate and distinct offenses involving moving violations singularly or in combination, in the operation of a motor vehicle, which are required to be reported to the Department of Public Safety for which four or more points are assigned pursuant to

Section 56-1-720 or which are enumerated in subsection (a) of this section;

(c) The offenses included in subsections (a) and (b) shall be deemed to include offenses under any federal law, any law of another state or any municipality or county ordinance of another state substantially conforming to the above provisions.

Hence, one may become an habitual offender through commission of a number of different offenses, including driving under suspension.

S.C. Code Ann. § 56-1-1030 (Supp. 1994) requires the Department of Public Safety to institute an agency action to revoke or suspend the person's driver's license if the Department finds the person satisfies the definition of "habitual offender." Section 56-1-1030 also requires the Department, upon finding the person to be an habitual offender, to direct the person not to operate a motor vehicle on the highways of this State, and to surrender his driver's license or permit to the Department.

S.C. Code Ann. § 56-1-1100 (Supp. 1994) provides:

It is unlawful for a person to operate a motor vehicle in this State while the decision of the Department of Public Safety prohibiting the operation remains in effect. A person found to be an habitual offender under the provisions of this article, who subsequently is convicted of operating a motor vehicle in this State while the decision of the Department of Public Safety prohibiting the operation is in effect, is guilty of a felony and must be imprisoned not more than five years.

Hence, the elements of the crime prohibited by § 56-1-1100 are:

(1) operating;
(2) a motor vehicle;
(3) in this State;
(4) while under a Department ruling that the driver is an habitual offender.

The State must establish these elements to obtain a conviction for HTO under section 56-1-1100.

Comparing the elements of the two offenses, it is clear they are not the same offense, and neither is a lesser included offense of the other. For example, for DUS one must be "driving" the vehicle, but for HTO one need only be "operating." "Driving" and "operating" are different activities: to be "driving" the motor vehicle must be in motion, yet for operating it need not be in motion. *See State v. Graves*, 269 S.C. 356, 237 S.E. (2d) 584 (1977) (the Supreme Court adopted the view that the word "drive," as used in statutes of this kind, usually denotes movement of the vehicle in some direction, whereas the word "operate" has a broader meaning so as to include not only the motion of the vehicle, but also acts which engage the machinery of the vehicle that, alone or in sequence, will set in motion the motive power of the vehicle).

For DUS, one must be on a public highway, but for HTO one need only be "in this State" so that the offense may occur on private property.

For DUS, the defendant's license to drive must be canceled, suspended, or revoked, but HTO does not expressly contain such a requirement; rather, one must be under a Department ruling that he is an habitual offender (which is not necessary for a conviction for DUS). While it is true that driving under suspension is one way a person may ultimately be declared an habitual offender (in combination with two other offenses under § 56-1-1020 over a three-year period), it is the act of driving after the Department has made such a determination, not the actual act of driving under suspension, which gives rise to the offense prohibited by 56-1-1100.

Applying the *Blockburger* test, we find the two offenses to be separate and distinct, such that prosecution for both does not offend the Double Jeopardy Clause. The offenses of DUS and HTO do not have identical statutory elements, and one is not a lesser included offense of the other. This ends the inquiry, and prosecution under both statutes is not barred.

## II.

Moyd also argues the trial court erred in denying his motion for a mistrial when allegedly prejudicial evidence suggesting Moyd was driving intoxicated surfaced at trial. We disagree.

Officer Simpson testified about the night he stopped Moyd

and arrested him for DUS. Simpson stated, "As I walked up to the driver, who identified himself as Mr. Moyd, I observed an odor of alcoholic beverage coming from. . . ." Defense counsel objected and a bench conference took place out of the jury's hearing. The trial judge then gave the following curative instruction:

> Ladies and gentlemen, any comments about anything else other than the driving of the individual is not an issue at this time and please disregard anything that was said. The only issue is whether he was driving the vehicle at this time. So if you would, disregard any comments that may have been made about conditions he's not charged with anything at all. There's been no charges or crimes other than the fact of driving under suspension.
>
> Continue on. And I ask the jury to disregard it. I direct you to disregard it. Continue on, Mr. Jackson (prosecutor).

Moyd did not object to the curative instruction.

After the state rested its case, Moyd moved for a mistrial based upon Simpson's answer. The court ruled its curative instruction was sufficient and denied the motion. On appeal, Moyd claims the curative instruction "Did not vitiate the prejudice arising from the error."

A trial judge should exhaust other available methods to cure prejudice before aborting trial. *State v. Stone,* 290 S.C. 380, 350 S.E. (2d) 517 (1986). Where the prejudicial effect is minimal, a mistrial need not be granted in every case where incompetent evidence is received and later stricken and a curative instruction is given. *State v. Dawkins,* 297 S.C. 386, 377 S.E. (2d) 298 (1989). However, if the objecting party accepts the ruling of the trial judge and does not contemporaneously object to the sufficiency of a curative instruction or move for mistrial, the error is deemed cured, and the issue is not preserved for appeal. *State v. Morris,* 307 S.C. 480, 415 S.E. (2d) 819 (Ct. App. 1991).

We find any error in admitting Officer Simmon's testimony about alcohol was cured by the trial court's instruction, particularly since Moyd did not object before the trial court to the sufficiency of the instruction at the time it was given or ask for additional curative instructions. Accordingly, the trial

court did not err in refusing Moyd's motion for a mistrial. Accordingly, the judgment is

Affirmed.

CONNOR and HEARN, JJ., concur.