523 S.E.2d 466

**STATE of South Carolina, Respondent,**

v.

**Sherry R. PACE, Appellant.**

**No. 3055.**

Court of Appeals of South Carolina.

Heard Sept. 8, 1999.

Decided Oct. 11, 1999.

408

William G. Yarborough, III, of Ashmore & Yarborough, of Greenville, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Assistant Attorney General G. Robert Deloach, III, all of Columbia, for respondent.

GOOLSBY, Judge:

A jury convicted Sherry Pace of forgery and insurance fraud, and the trial court sentenced her to three years imprisonment, suspended on service of thirty days, plus three years probation and a $5,000 fine. Pace appeals, arguing double jeopardy bars her conviction for both offenses, and that the trial court erred in admitting certain evidence and refusing to declare a mistrial. We affirm.

## FACTS/PROCEDURAL HISTORY

Sherry Pace (Pace) and her husband Mike are co-owners and the sole employees of Fast Pace Rent-a-Car in Greenville. Sherry Pace is also the registered agent for Fast Pace. On August 24, 1995, Fast Pace rented a late-model Ford Escort to Christopher King. When King did not return the car as scheduled, Pace waited seventy-two hours, as was her normal business practice, before calling the Greenville Police Department and reporting the car stolen on September 1.

On September 8, 1995, the New York City Department of Transportation impounded the abandoned Escort. Following standard procedure, Carol Davis, supervisor of the Depart-

ment's Bronx auction unit, determined the registered owner of the vehicle was Downtown Rent-a-Car.[1] On September 14, Davis mailed Downtown a certified letter, return receipt requested, stating the car would be sold at public auction within 10 days if not redeemed by the owner. Per the Department's normal business practice, Davis also sent a duplicate letter to Downtown via first class mail. On September 18, someone from Fast Pace phoned Davis' direct office line.[2] The next day, Pace signed the return receipt for the certified letter.

On October 2, Pace faxed an "Affidavit of Total Theft of a Motor Vehicle" to Unisun Insurance Company.[3] At the bottom of the affidavit, under the heading "subscribed and sworn to me," Pace signed Barrie R. Collins' name. Pace had neither Collins' express permission to sign the affidavit nor blanket authority to sign Collins' name, though apparently she did so on numerous other occasions for convenience purposes.[4]

---

**1.** The Paces began their business as Downtown Rent-a-Car in June 1994, but changed the name to Fast Pace Rent-a-Car a year later. The business address and phone number, however, remained unchanged. Under both names, the company shared office space with Downtown Motors, owned by Sherry Pace's father.

**2.** Davis testified that her direct telephone number was not available through directory assistance and that the only way to obtain the number would be through receipt of the notification letter sent from her office.

**3.** Pace's former carrier, Ohio Casualty Company, had insured Downtown Rent-a-Car's fleet for the previous year. Ohio Casualty cancelled the policy in July 1995, however, apparently due to numerous vehicle theft claims. Downtown changed its name to Fast Pace the same month. Interestingly, the Unisun policy application, under the heading "loss history," declared that Fast Pace had not filed any insurance claims in the previous five years. The application also reflected Fast Pace's assertion that it had not been denied coverage or had a policy cancelled in the previous three years. Sherry Pace admitted signing the application but claimed her insurance agent filled in the information. Similarly, on Unisun's affidavit of vehicle theft, Pace stated that Fast Pace's only prior vehicle theft was that of one pick-up truck stolen from the lot.

**4.** Pace's father, Bob Rogers, employed Collins at Rogers Body Shop, located a few miles from Fast Pace. Pace had been warned by her former insurer not to sign Collins' name to any documents that needed notarizing. As a result, Collins specifically asked Pace not to sign her name as a notary in the future.

As a result of this claim, Unisun paid Fast Pace Rent-a-Car $13,500 for the loss of the Escort.

On November 3, 1995, Davis teletyped a message to the Greenville Police Department requesting information on the Escort. Fran Gentry, the database coordinator, replied that the car was reported stolen and that the owner was Downtown Rent-a-Car. She then telephoned the Fast Pace office and informed an unidentified male that the car had been located in New York. Gentry also contacted Detective Craig Gardner, who had been assigned the case after Pace reported the car missing in September. Gardner, in turn, called Fast Pace and also spoke with an unidentified male, who confirmed that the police dispatch had just called and relayed information concerning the car's recovery. He stated that Fast Pace was making arrangements to pick the car up in New York.[5]

By January 1996, over two months later, no one from Fast Pace had contacted Davis to claim the Escort, so she sent another certified redemption letter (and copy via first class mail) to the same address. Ricky Jenkins signed for it on January 16, and placed it, as he always did, on a desk shared by Mike and Sherry Pace. Jenkins later noticed that the stack of mail on the desk was gone. On January 25, Unisun, after receiving a call from Davis, began an investigation of Pace's claim.

On March 11, Tom Pfeiffer, Unisun's claims investigator, went to see Pace and asked why she had filed a claim on the Escort when the evidence in his possession indicated Fast Pace was informed in September of 1995 that the car was recovered in New York. He also told her he would have to turn this information over to the Insurance Fraud Division of the Attorney General's Office. Pace, however, became irate, and Pfeiffer left. A short time later Pace called Pfeiffer on his cell phone and asked him to come back. When he returned, Pace asked Pfeiffer "what [did she] have to do to make this right?" Pfeiffer replied that paying back the money Unisun paid on the claim would be a beginning. Pace agreed

---

5. Ricky Jenkins, employed by Pace's father, testified he answered the telephone when no one else was around and that it was his regular practice to take messages for the Paces. Jenkins also stated that during business hours, the Paces generally forwarded Fast Pace's calls to a cell phone when neither was at the Fast Pace office.

and asked several times if there was anything she could do to keep him from referring the matter to the Fraud Division, but Pfeiffer responded that he was required by law to report the incident. A few days later Fast Pace hired Jenkins to retrieve the Escort.

On July 16, 1996, a Greenville County Grand Jury indicted Sherry Pace for making a false statement or misrepresentation in filing the affidavit of theft. On November 12, 1996, the grand jury also indicted Pace for forging Collins' signature on the same form. At trial, Pace moved to "quash or otherwise dismiss" the indictment for forgery on double jeopardy grounds. The trial court denied the motion. On December 12, the jury convicted Pace on both counts of the indictment. For the insurance fraud conviction, the trial court sentenced Pace to three years imprisonment, suspended on service of thirty days, followed by three years probation to terminate on payment of a $5,000 fine. The court handed down an identical concurrent sentence on the forgery count, with the exception that no separate fine was imposed. Pace now appeals, arguing the trial court erred in (1) admitting evidence of the second set of notice letters mailed to Pace from the New York Department of Transportation, (2) denying her motion to quash or otherwise dismiss the forgery indictment, and (3) refusing to grant a mistrial based on the jury's request for Davis' telephone log.

## LAW/ANALYSIS

### I.

■ Pace first claims the trial court improperly admitted evidence of the second letter from Davis notifying her that the Escort was impounded in New York. According to Pace, this evidence was irrelevant and prejudicial. We disagree.

■ The admission of evidence, including its relevancy and materiality, rests in the sound discretion of the trial court, and absent an abuse of discretion, will not be disturbed on appeal. *American Fed. Bank, FSB v. Number One Main Joint Venture*, 321 S.C. 169, 467 S.E.2d 439 (1996). Evidence is relevant if it tends to establish or make more or less probable some matter upon which it directly or indirectly bears. *State v. Schmidt*, 288 S.C. 301, 342 S.E.2d 401 (1986).

Evidence that assists in getting to the truth of an issue is deemed to be relevant and is admissible, unless excluded by some legal rule. *Toole v. Salter*, 249 S.C. 354, 154 S.E.2d 434 (1967).

Pace initially asserts evidence of the second letter was not relevant, thus not admissible, because Ricky Jenkins, not Pace, signed the certification receipt. The letters, however, were admissible to show Pace's knowledge of the car's whereabouts, and Jenkins testified he placed the certified letter on a desk shared by Sherry and Mike Pace. Any question regarding Pace's actual receipt of the letters goes to credibility and implicates the weight of the evidence, not its admissibility. *Cf. State v. Sullivan*, 277 S.C. 35, 282 S.E.2d 838 (1981) (argument concerning alternative explanation of evidence found at crime scene went to the weight of the evidence, not its admissibility); *State v. Joseph*, 328 S.C. 352, 491 S.E.2d 275 (Ct.App.1997) (discrepancies in testimony reflected on credibility of the evidence and not its admissibility).

■ Pace further argues the second letter sent by Davis in January was not relevant because it was sent and received several months after she signed Collins' name and filed the affidavit with Unisun. The trial court overruled Pace's objection on this ground, finding that "it bears upon the issue of any fraudulent intent." We agree.

■ Evidence of fraudulent intent was clearly relevant to Pace's guilt of the crimes charged. Fraudulent intent is "a condition of the mind beyond the reach of the senses," which is "usually kept secret, and can only be proved by unguarded expressions, conduct and circumstances generally." *State v. Jordan*, 255 S.C. 86, 90, 177 S.E.2d 464, 465 (1970). As a general rule, any act or conduct on the part of the accused is admissible as some evidence of consciousness of guilt. *State v. McDowell*, 266 S.C. 508, 224 S.E.2d 889 (1976). "Fraud may be deduced not only from deceptive or false representations, but from facts, incidents, and circumstances which may be trivial in themselves, but decisive in a given case of fraudulent design." *Cook v. Metropolitan Life Ins. Co.*, 186 S.C. 77, 84, 194 S.E. 636, 639 (1938).

Davis' letter, along with the question of whether Pace received it, was properly before the jury as it pertained to her knowledge of the whereabouts of the car and any intent she

had to conceal that knowledge. The jury could have inferred that Pace purposely ignored the second letter, or failed to act upon receipt of the second letter, in an attempt to continue or conceal her fraud upon the insurance company.

We might add that we do not agree with Pace's assertion that the admission of the second letter in evidence was more prejudicial than probative. A trial court must exclude relevant evidence "if its probative value is *substantially* outweighed by the danger of unfair prejudice." *State v. Asbury*, 328 S.C. 187, 193, 493 S.E.2d 349, 352 (1997) (emphasis added). Evidence is unfairly prejudicial "if it has an undue tendency to suggest decision on an improper basis...." *State v. Alexander*, 303 S.C. 377, 382, 401 S.E.2d 146, 149 (1991). A trial judge's decision "regarding the comparative probative value and prejudicial effect of evidence should be reversed only in 'exceptional circumstances.'" *United States v. Green*, 887 F.2d 25, 27 (1st Cir.1989). Here, nothing about the questioned evidence invited a decision on an improper basis. Indeed, the probative value of the evidence outweighed its prejudicial effect because the evidence tended to show Pace's guilty knowledge and intent.

## II.

Pace next contends the trial court erred in refusing to quash the forgery indictment, claiming double jeopardy bars convictions for both forgery and insurance fraud based on the same conduct. This argument has no merit.

In *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), the Supreme Court expanded its traditional double jeopardy analysis to include a "same conduct" test. This decision, however, was overruled in *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Our supreme court subsequently clarified *Dixon*'s relevance to this state's jurisprudence by holding that *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), is "the only remaining test for determining a double jeopardy violation, in both multiple punishment and successive prosecution cases." *State v. Easler*, 327 S.C. 121, 132, 489 S.E.2d 617, 623 (1997) (declining to extend broader protection under our state constitution than that afforded under the federal constitution). The only relevant inquiry in the case before us,

therefore, is whether the offenses of which Pace was convicted survive the *Blockburger* "same elements" test.

The *Blockburger* test is utilized when the same act by a defendant violates two distinct statutory provisions to determine whether the defendant's actions constitute two offenses or only one. The test as applied "is whether each [offense charged] requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180. Accordingly, a defendant may be convicted of two separate crimes arising from the same conduct without being subjected to double jeopardy, where her conduct "consists of two 'distinct' offenses." *State v. Moyd,* 321 S.C. 256, 258, 468 S.E.2d 7, 9 (Ct.App.1996).

Here, Pace's forgery conviction rested upon proof that she: (1) falsely made a writing or instrument (2) with knowledge that such was false, forged or counterfeited and (3) with an intent to defraud another. *See* S.C.Code Ann. § 16–13–10 (Supp.1998); *State v. Wescott,* 316 S.C. 473, 450 S.E.2d 598 (Ct.App.1994). The insurance fraud conviction, on the other hand, required proof of the following elements: (1) that Pace made a false statement (2) which was material (3) with knowledge of its falsity (4) intending to obtain an undeserved economic advantage, benefit, or payment (5) in connection with an insurance transaction. *See* S.C.Code Ann. §§ 38–55–530(D), 540 (Supp.1998). Pace's conviction for forgery required proof that she falsely made a writing or instrument, which is not an element of insurance fraud. Conversely, to obtain a conviction for insurance fraud, the State had to prove Pace intended to obtain an undeserved economic benefit, *i.e.,* Unisun's insurance payment, which is not required to prove a forgery. *See Brown v. Bailey,* 215 S.C. 175, 54 S.E.2d 769 (1949) (stating that, in proving forgery, it is not necessary to show a defendant profited or intended to profit by the forgery). Because each offense contains at least one element which must be proven by an additional fact that the other does not require, the trial court correctly held that Pace's conviction on both counts does not violate double jeopardy.

### III.

Finally, Pace argues the trial court erred in denying her motion for a mistrial based on the jury's request for Carol

Davis' telephone log. This issue is not preserved for our review.

The record reflects Davis testified *in camera* that she maintained a telephone log of her calls to Fast Pace that documented her attempts to locate the owner of the Escort.[6] The trial court refused to admit the log into evidence, however, because no testimony or specific evidence was presented to connect the messages Davis left to Pace. During deliberations, the jury sent out a note requesting the "[t]estamony [sic] pertaining to Carrol [sic] Davis phone log." With the consent of both parties, the trial court replied as follows:

> There is no phone log in evidence. Therefore there is no testimony as to a phone log. If you want to hear specific testimony, please advise.

Afterward, the court put the question from the jury on the record. Pace's counsel then moved for a mistrial based on his belief that "the jury [had] received information outside of what [was] on the record." The court denied the motion but offered to give the jury a curative instruction when they returned from lunch. With the consent of counsel, the trial court instructed the jury as follows:

> I told you at the outset, and repeated it throughout, what evidence is. In this case there is no phone log in evidence, period. It is not in evidence. There is no phone log. There's no phone log in evidence for you to consider. You are to consider this case only on the evidence received. It would be improper for you to consider any matter beyond the evidence received.
>
> I see this word phone log and it concerns me because there is no evidence of any phone log whatsoever in this case. That should in no way, form, shape or fashion impact or enter into any deliberations towards reaching a verdict.

After the jury exited the courtroom, the record reflects the following exchange:

---

**6.** Davis kept the telephone log in the normal course of business. Over a span of several months, the log reflected five telephone calls from Davis to Downtown Rent-a-Car, resulting in messages left by Davis but no return calls. The court received this evidence by way of a proffer from Davis but ultimately ruled it inadmissible as "fundamentally unfair" because the State failed to prove the requisite nexus between Pace and the phone number reflected in the log.

The Court: There was a curative instruction given. On that basis, I'm going to ask if there are any exceptions or deletions at this time. I wanted to give, particularly, Mr. Yarborough a chance to respond. But are there any exceptions or additions regarding my curative instruction from the State?

Ms. Christophillis: Nothing from the State.

Mr. Yarborough: No, sir, your honor.

The decision to grant or deny a mistrial lies within the sound discretion of the trial court. *State v. Dawkins*, 297 S.C. 386, 377 S.E.2d 298 (1989); *State v. Jones*, 325 S.C. 310, 323, 479 S.E.2d 517, 524 (Ct.App.1996) ("A mistrial should not be ordered in every case where incompetent evidence is received and later stricken out."). Moreover, where the trial court gives the jury a curative instruction, "[n]o issue is preserved for appellate review if the objecting party accepts the judge's ruling and does not contemporaneously make an additional objection to the sufficiency of the curative charge or move [again] for a mistrial." *State v. George*, 323 S.C. 496, 510, 476 S.E.2d 903, 912 (1996). Here, Pace did not except to the court's curative instruction nor did she request any further relief. She may not, therefore, complain of any error on appeal.

**AFFIRMED.**

CONNOR and ANDERSON, JJ., concur.