688 S.E.2d 857

The STATE, Respondent,

v.

Randy Charles ELDERS, Appellant.

No. 4648.

Court of Appeals of South Carolina.

Heard Dec. 9, 2009.
Decided Jan. 28, 2010.

476

Robert William Mills, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Deborah R.J. Shupe, and Solicitor Warren Blair Giese, all of Columbia, for Respondent.

GEATHERS, J.

Randy Elders appeals his convictions for armed robbery, assault and battery of a high and aggravated nature, and two counts of kidnapping, arguing that the trial court erred by admitting certain photographs and knives into evidence. Elders further contends that the trial court erred in failing to grant his motion for a directed verdict with respect to his kidnapping charges. Specifically, he claims that, because he had previously pled guilty to carjacking, the Double Jeopardy Clause barred the State from charging him with kidnapping for the same incident. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Elders and his girlfriend, Christina Hall, were arrested and indicted for crimes that occurred on the evening of April 17, 2005. At approximately 7:30 p.m. that evening, Dwight Riggs and his wife Kathryn were returning home from church when they stopped at the Bi–Lo grocery store on Garners Ferry Road in Columbia, South Carolina. Mrs. Riggs went into the store, and Mr. Riggs remained in the car. As he waited for his wife, Mr. Riggs was approached by a woman he had never seen before. The woman asked Mr. Riggs to give her and her male companion a ride to Mike's Produce Market, which was located a short distance away on Garners Ferry Road. Mrs. Riggs returned to the car and sat down in the front passenger seat. The woman, along with her male friend, got into the back seat of the car, with the man sitting directly behind Mrs.

Riggs. Mr. Riggs drove to Mike's Produce Market and pulled into the parking lot.

Upon their arrival, the male passenger placed a knife to Mrs. Riggs' neck and told Mr. Riggs to "keep going straight." According to Mrs. Riggs, the knife had a "little hump" on it and a blade that was about six to eight inches long. Instead of complying with the man's orders, Mr. Riggs grabbed both of the man's hands and pulled him out of the car. A struggle ensued on the pavement outside of the car, and Mr. Riggs was stabbed in the wrist and the chest. The man subsequently broke away from Mr. Riggs and ran over to Mrs. Riggs, who had exited the car. The man proceeded to tackle Mrs. Riggs and take her purse. In doing so, he broke Mrs. Riggs' toe and scraped her arm and knee. The man and the woman then left the scene in the Riggses' car.

The police later determined that the man and woman were Elders and Hall. In connection with the incident, Elders was indicted for one count of armed robbery, two counts of assault and battery with intent to kill (ABIK), one count of carjacking, and two counts of kidnapping. Prior to trial, Elders informed the trial court that he wanted to plead guilty to the carjacking charge and the ABIK charge involving Mr. Riggs. The State objected, arguing that the guilty pleas would hinder its ability to present a cogent case regarding the other four charges. After hearing arguments on both sides, the trial court allowed Elders to plead guilty to both the carjacking charge and the ABIK charge concerning Mr. Riggs.

At trial, the State offered into evidence a photograph of Mr. Riggs that showed the injuries he had sustained. Elders objected to the admission of the photograph, arguing that it was prejudicial and inflammatory because it showed Mr. Riggs in the hospital, attached to medical equipment. The trial court concluded that the photograph was no more prejudicial than other photographs of Mr. Riggs that were admitted without objection and consequently admitted the photograph into evidence.

Additionally, later in the trial, the State offered a photograph of Mrs. Riggs that showed the injuries to her knee. Because it depicted Mrs. Riggs in a wheelchair, Elders objected to the admission of the photograph, arguing that it, like the

photograph of Mr. Riggs, was prejudicial and inflammatory. After reviewing the photograph, the trial court overruled Elders' objection.

Thereafter, the State offered four knives that were found by the police on April 19, 2005 (two days after the crimes occurred) in Elders' belongings at the home of Elders' friend, Chris Smith.[1] Three of the knives were pocketknives that were found in Elders' suitcase. The fourth knife, which was found in Elders' shoe, was a switch blade with bears emblazoned on the handle. Elders objected to the admission of the knives, contending that they were irrelevant because none of them were used during the commission of the crimes. Over Elders' objection, the trial court admitted the knives into evidence.

At the conclusion of the State's case in chief, Elders moved for a directed verdict with respect to his kidnapping charges. Elders argued that charging him with kidnapping after he had pled guilty to carjacking constituted double jeopardy. The trial court denied Elders' motion.

The jury subsequently found Elders guilty of armed robbery and two counts of kidnapping. Additionally, with respect to the ABIK charge involving Mrs. Riggs, the jury found Elders guilty of the lesser included offense of assault and battery of a high and aggravated nature (ABHAN). The trial court sentenced Elders to twenty years' imprisonment for the carjacking conviction, fifteen years' imprisonment for the ABIK conviction,[2] thirty years' imprisonment for the armed robbery conviction, thirty years' imprisonment for each of the two kidnapping convictions, and ten years' imprisonment for the ABHAN conviction.[3] This appeal followed.

---

1. On the evening before the knives were discovered, Elders went over to Smith's house and spent the night there.

2. As noted above, Elders is not appealing his carjacking conviction or his ABIK conviction.

3. At sentencing, the trial court appeared to indicate that the last four of Elders' sentences were to run concurrently to the first two, thus effectively giving Elders a thirty-five year sentence. However, according to the State's brief, *all* of Elders' sentences were set to run concurrently. For the purposes of this appeal, it is unnecessary for us to resolve this apparent discrepancy.

## ISSUES ON APPEAL

1. Did the trial court err by failing to direct a verdict on Elders' kidnapping charges?
2. Did the trial court err by admitting the photographs of Mr. Riggs and Mrs. Riggs into evidence?
3. Did the trial court err by admitting the four knives into evidence?

## STANDARD OF REVIEW

### I. Directed Verdict

When reviewing the denial of a motion for a directed verdict, an appellate court must employ the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Elam v. S.C. Dep't of Transp.,* 361 S.C. 9, 27–28, 602 S.E.2d 772, 782 (2004). This court will reverse a trial court's ruling on a directed verdict motion if no evidence supports the trial court's decision or the ruling is controlled by an error of law. *Howard v. Roberson,* 376 S.C. 143, 148–49, 654 S.E.2d 877, 880 (Ct.App.2007).

### II. Admission of Evidence

"The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice." *State v. Douglas,* 369 S.C. 424, 429, 632 S.E.2d 845, 847–48 (2006). An abuse of discretion occurs where the conclusions of the trial court either lack evidentiary support or are controlled by an error of law. *Id.* at 429–30, 632 S.E.2d at 848. Prejudice exists when there is "a reasonable probability that the jury's verdict was influenced by the challenged evidence or the lack thereof." *State v. Martucci,* 380 S.C. 232, 248, 669 S.E.2d 598, 606 (Ct.App.2008).

Where a review of the whole record establishes that an error is harmless beyond a reasonable doubt, the conviction should not be reversed. *State v. Thompson,* 352 S.C. 552, 562, 575 S.E.2d 77, 83 (Ct.App.2003). "Error is harmless beyond a reasonable doubt where it did not contribute to the verdict

obtained." *State v. Pagan*, 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006). "[I]n order to conclude that the error did not contribute to the verdict, the Court must 'find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" *Lowry v. State*, 376 S.C. 499, 508, 657 S.E.2d 760, 765 (2008) (quoting *Yates v. Evatt*, 500 U.S. 391, 403, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991)).

## LAW/ANALYSIS

### I. Directed Verdict

█ Elders contends that the trial court erred by failing to grant his motion for a directed verdict with respect to his kidnapping charges. He argues that the Double Jeopardy Clause precluded his being convicted of both kidnapping and carjacking. We disagree.

█ The Double Jeopardy Clauses of the United States and South Carolina Constitutions protect citizens from being twice placed in jeopardy of life or liberty for the same offense. *See* U.S. Const. amend. V ("No person shall be ... subject for the same offence to be twice put in jeopardy of life or limb ..."); S.C. Const. art. I, § 12 ("No person shall be subject for the same offense to be twice put in jeopardy of life or liberty ..."). More specifically, "[t]he Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal or conviction, and protects against multiple punishments for the same offense." *Stevenson v. State*, 335 S.C. 193, 198, 516 S.E.2d 434, 436 (1999). In both multiple punishment and successive prosecution cases, double jeopardy claims are evaluated under the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).[4]

█ Pursuant to *Blockburger*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockbur-*

---

4. *Stevenson*, 335 S.C. at 198, 516 S.E.2d at 437; *State v. Easler*, 327 S.C. 121, 132, 489 S.E.2d 617, 623 (1997).

*ger,* 284 U.S. at 304, 52 S.Ct. 180; *see also State v. Hall,* 280 S.C. 74, 76 n. 1, 310 S.E.2d 429, 430 n. 1 (1983). Under the *Blockburger* test, a defendant may be convicted of two separate crimes arising from the same conduct without being placed in double jeopardy where his conduct "consists of two 'distinct' offenses." *State v. Pace,* 337 S.C. 407, 417, 523 S.E.2d 466, 471 (Ct.App.1999) (quoting *State v. Moyd,* 321 S.C. 256, 258, 468 S.E.2d 7, 9 (Ct.App.1996)); *accord Hall,* 280 S.C. at 77, 310 S.E.2d at 431; *State v. Steadman,* 216 S.C. 579, 589, 59 S.E.2d 168, 173 (1950); *State v. Lewis,* 321 S.C. 146, 148, 467 S.E.2d 265, 266 (Ct.App.1996).[5]

Here, the kidnapping statute and the carjacking statute each require proof of a fact that the other one does not. In order to convict a defendant of kidnapping, the State is required to prove that the defendant: (i) unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted or carried away any other person by any means whatsoever; (ii) without authority of law. S.C.Code Ann. § 16–3–910 (2003).[6] In contrast, to convict a defendant of carjacking, the State must prove that the defendant: (i) took, or attempted to take, a motor vehicle from another person; (ii) by force and violence or by intimidation; (iii) while the person was operating the vehicle or while the person was in the vehicle. S.C.Code Ann. § 16–3–1075(B) (2003). Thus, whereas the kidnapping statute

---

5. *Blockburger* notwithstanding, a court may conclude that there is no double jeopardy violation even if the "same elements" test is met where the legislature clearly intends multiple punishments for a single act. *Stevenson,* 335 S.C. at 198 n. 4, 516 S.E.2d at 437 n. 4 (citing *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)). Importantly, the Double Jeopardy Clause does not limit the legislature's power to impose sentences for a given crime, but rather acts as a restraint on courts and prosecutors. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Hall,* 280 S.C. at 77, 310 S.E.2d at 431.

6. Under South Carolina law, a defendant may be convicted of kidnapping even when the kidnapping is merely incidental to another crime. *See Hall,* 280 S.C. at 77–78, 310 S.E.2d at 431–32 (1983); *State v. East,* 353 S.C. 634, 636–38, 578 S.E.2d 748, 750 (Ct.App.2003). However, there is a caveat to this rule; where the defendant has been sentenced for murder, the kidnapping statute prohibits the trial court from separately sentencing the defendant for kidnapping. S.C.Code Ann. § 16–3–910 (2003); *State v. Livingston,* 282 S.C. 1, 8, 317 S.E.2d 129, 133 (1984).

requires proof that the defendant "unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted or carried away any other person by any means whatsoever," the carjacking statute does not require such proof. Conversely, the carjacking statute requires the State to prove that the defendant "took, or attempted to take, a motor vehicle from another person," which is not required to prove kidnapping. Therefore, because kidnapping and carjacking each contain an element that the other does not, we hold that the trial court did not err by denying Elders' motion for a directed verdict on his kidnapping charges.

## II. Admission of Photographs

Next, Elders argues that the trial court erred by admitting into evidence the photograph of Mr. Riggs in the hospital, attached to medical equipment, and the photograph depicting Mrs. Riggs in a wheelchair. Specifically, Elders contends that the photographs were inflammatory and that they were introduced solely to arouse the passions and prejudices of the jury. We disagree.

"The relevance, materiality, and admissibility of photographs are matters within the sound discretion of the trial court and a ruling will be disturbed only upon a showing of an abuse of discretion." *Martucci*, 380 S.C. at 249, 669 S.E.2d at 607. Ordinarily, it is not an abuse of discretion to admit photographs that corroborate testimony. *State v. Hambright*, 310 S.C. 382, 388, 426 S.E.2d 806, 809 (Ct.App.1992). However, "[p]hotographs calculated to arouse the sympathy or prejudice of the jury should be excluded if they are irrelevant or not necessary to substantiate material facts or conditions." *State v. Brazell*, 325 S.C. 65, 78, 480 S.E.2d 64, 72 (1997).

### A. Photograph of Mr. Riggs

Here, we conclude that the trial court did not err by admitting the photograph of Mr. Riggs. The photograph showed the puncture wound to Mr. Riggs' chest, as well as abrasions to the outside of his hand, and therefore corroborated Mr. Riggs' testimony regarding his struggle with Elders and the injuries he sustained as a result. Additionally, because the photograph showed that Mr. Riggs had been

stabbed, it was relevant to the armed robbery charge in that it tended to demonstrate that Elders was armed with a knife or similar weapon on the evening the crimes occurred.[7]

Thus, because the photograph had significant probative value, the present case is readily distinguishable from the two cases relied upon by Elders: *State v. Langley,* 334 S.C. 643, 515 S.E.2d 98 (1999) and *State v. Livingston,* 327 S.C. 17, 488 S.E.2d 313 (1997). In each of those two cases, the South Carolina Supreme Court ruled that the trial court erred by admitting a photograph of the crime victim because the photograph had no probative value. *See Langley,* 334 S.C. at 648, 515 S.E.2d at 100 (concluding that photograph of murder victim was "not relevant to proving the guilt of appellant" because it was introduced solely to distance victim from drug dealing occurring near murder scene and to neutralize testimony by the State's witnesses regarding victim's drug use); *Livingston,* 327 S.C. at 20, 488 S.E.2d at 314 (finding that photograph of felony DUI victim taken shortly before her death was "irrelevant to any matter in issue"). Here, the photograph of Mr. Riggs was relevant to establishing Elders' guilt and therefore *Langley* and *Livingston* are inapposite to the present case. *See State v. Bennett,* 369 S.C. 219, 228–29, 632 S.E.2d 281, 286–87 (2006) (finding that hospital photographs introduced to show the extent of the injuries suffered by ABHAN victims were "easily distinguishable" from the photographs in *Langley* and *Livingston* due to their highly probative nature).

Furthermore, while the photograph may have aroused some sympathy among the jury, we conclude that the photograph was not unduly prejudicial. The photograph was similar to other photographs that depicted Mr. Riggs' injuries and that were admitted without objection. Additionally, while the photograph showed Mr. Riggs in the hospital, connected to medical equipment, Mr. Riggs testified without objection that he spent several hours in the hospital after the incident. Therefore, we hold that the trial court did not err by failing to

---

7. Although the armed robbery charge was brought in connection with the theft of Mrs. Riggs' purse, Elders' struggle with Mr. Riggs occurred shortly before Mrs. Riggs' purse was taken.

exclude the photograph on the basis that it was too inflammatory.

Nonetheless, Elders appears to suggest that it was improper to admit the photograph given that Elders had, prior to trial, pled guilty to the ABIK charge relating to Mr. Riggs. However, during the pre-trial arguments about Elders' guilty pleas, Elders' counsel stated that the defense would not object to the State's presenting any of the evidence that the State would have introduced on the two charges to which Elders desired to plead guilty. Additionally, as noted above, the photograph was relevant to the armed robbery charge. Accordingly, we hold that the trial court properly admitted the photograph of Mr. Riggs.

### B. Photograph of Mrs. Riggs

Similarly, we conclude that the trial court did not err by admitting the photograph of Mrs. Riggs. Like the photograph of Mr. Riggs, the photograph of Mrs. Riggs was probative without being overly prejudicial. It showed the injuries to Mrs. Riggs' knee and thus corroborated her testimony that her knee had been injured when Elders grabbed her purse from her. Additionally, the photograph was relevant to both the ABIK charge with respect to Mrs. Riggs and the armed robbery charge. Moreover, although the photograph showed Mrs. Riggs in a wheelchair, we do not find that the photograph was inflammatory. Other photographs of Mrs. Riggs' injuries were admitted without objection. Therefore, we hold that the photograph of Mrs. Riggs was properly admitted.

### III. Admission of Knives

Finally, Elders argues that the trial court erred by admitting into evidence the four knives that were found in Elders' belongings at the time he was arrested. Specifically, Elders claims that the knives were calculated to arouse the sympathy or prejudice of the jury and that they were irrelevant given that none of them were used during the crimes in question.

"Evidence which is not relevant is not admissible."

Rule 402, SCRE.[8] Additionally, even relevant evidence should be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Rule 403, SCRE. "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *State v. Gilchrist,* 329 S.C. 621, 630, 496 S.E.2d 424, 429 (Ct.App.1998) (quoting *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir.1993)).

Here, there is considerable evidence in the record demonstrating that the knives were not used in the commission of the crimes.[9] Additionally, none of the witnesses specifically testified that the knives were similar to the knife used to commit the crimes. Thus, evidence that the knives were found in Elders' belongings two days after the crimes occurred tended to prove not that Elders committed the crimes in question, but rather that he was the sort of person who might commit such crimes. Accordingly, in light of the negligible probative value of the knives, as well as the danger of unfair prejudice created by their admission, we hold that the knives should have been excluded pursuant to Rule 403, SCRE.

 Nonetheless, although admitting the knives was error, we find that the error was harmless in light of the overwhelming evidence of Elders' guilt. Both Mr. Riggs and Mrs. Riggs identified Elders as the person who put the knife to Mrs. Riggs' neck, who fought with Mr. Riggs, and who stole the Riggses' car and Mrs. Riggs' purse. Additionally, testimony by Hall corroborated the Riggses' testimony regarding Elders' involvement in the crimes. Moreover, Chris Smith and his mother, Dawn Smith, both testified that Elders confessed to stealing a car. In addition, the officer who arrested Elders a

---

**8.** "Relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE.

**9.** Mr. Riggs provided express testimony to that effect. Additionally, the State's expert in DNA analysis testified that he conducted a "very sensitive" screening test on the knives to determine the presence of blood and that he found no blood on the knives.

couple of days after the crimes occurred testified that he observed scratch marks on Elders' arms, hands and face, as well as a bandage on Elders' wrist, thus buttressing the testimony by Hall and the Riggses regarding the struggle between Elders and Mr. Riggs. Furthermore, a cigarette butt containing DNA that matched Elders' DNA was found in the Riggses' car, as was Elders' jacket. Finally, because Elders' guilty pleas were made shortly before the trial commenced, the jury was aware of the fact that Elders had pled guilty to carjacking and ABIK with respect to Mr. Riggs. Based on the foregoing, we are convinced beyond a reasonable doubt that the admission of the knives did not contribute to the jury's verdict and that reversal of Elders' convictions is therefore not warranted. *See State v. Bailey*, 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989) ("When guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached, the Court should not set aside a conviction because of insubstantial errors not affecting the result.").

## CONCLUSION

We hold that the trial court did not err by denying Elders' motion for a directed verdict with respect to his kidnapping charges. We also conclude that the trial court did not abuse its discretion by admitting the challenged photographs of Mr. and Mrs. Riggs. Although we find that the trial court erred by admitting the four knives, we deem the error harmless. Accordingly, Elders' convictions are

**AFFIRMED.**

HUFF, J., and GOOLSBY, A.J., concur.