## STATE v. MURRAY.

1. FORGERY—CHALLENGES.—THE LEGISLATURE is vested with power to declare what is forgery, and our Legislature has declared that uttering or publishing as true any false, forged or counterfeit writing constitutes forgery, and on trial for uttering a forged instrument, State is entitled to five per?mptory challenges.

2. ACTS—TITLES.—Words used by codifier at the beginning of chapter in Criminal Code for convenience in indicating subject matter of the chapter is not the title of an act.

3. FORGERY.—In order to convict for uttering or publishing a forged instrument, three things must be shown: 1. It must be uttered or published as true or genuine. 2. It must be known by the party uttering or publishing it as false, forged, or counterfeit. 3. It must be with intent to defraud, prejudice, or damage another; all of which are held to have been sufficiently proved against defendant in uttering a forged lease.

4. REHEARING refused.

Before PURDY, J., Sumter, March, 1904. Affirmed.

Indictment against George W. Murray for forging and uttering a lease.  From sentence on verdict of guilty, defendant appeals on following exceptions:

"First. Because, it is respectfully submitted, his Honor erred in allowing the State, over the objections of the defendant, to challenge peremptorily more than two jurors; whereas, the law only allowed the State two challenges in the trial of said case.

"Second. Because his Honor erred in refusing the motion of the defendant to direct a verdict of not guilty upon the close of the case for the State, which motion was made on the grounds: (1st) that the State had not proven that the lease was uttered by the defendant with any knowledge of its falsity; (2d) because there was no evidence to show any intent to defraud; (3d) because there was no evidence tending to show an effort to cheat or defraud by means of the lease; (4th) that there was no evidence tending to show that the defendant forged the lease or had any knowledge of the alleged forgery; (5th) because there was no evidence that the paper was actually uttered; but, on the contrary, it appeared that the lease was introduced in evidence by the defendant's attorney simply because it was in existence, and the evidence showed that the lease as introduced was in exact accordance with the terms of the lease relied upon by the plaintiffs, and consequently could not under any view of the testimony operate to cheat or defraud any person; and it further appeared that the defendant could not be convicted of uttering a forged instrument, under section 373, Criminal Code, because that statute only undertakes to define forgery, and cannot cover the independent crime of uttering a forged instrument, because it would be unconstitutional to that extent, the title of the act being 'Forgery and Offenses against the Currency.'

"Third. Because his Honor erred in not granting a new trial in said case, on the motion of the defendant, made upon the minutes of the Court, upon the grounds that the undisputed oral and documentary evidence taken in the case at

bar, and in the proceedings leading up to the case, and in which the lease was used as evidence, showed conclusively that the same was used only for legitimate purposes, and that the use of the same under the issues raised by the pleadings could not operate to cheat or defraud the Chatmans, nor could the defendant have intended to have cheated or defrauded the Chatmans, because said lease was in exact terms as that introduced in evidence by the Chatmans. And because there was no evidence tending to show that the defendant either forged or caused to be forged the lease, nor was there any evidence tending to show that the defendant had any reason to believe the lease to have been forged; because said lease being in exact accordance with the true contract as set up by the Chatmans, its introduction in evidence strengthened the case of the plaintiffs, and in no way benefited the case of the defendant, for the reason that the sole issues raised by the pleadings and evidence in the case for specific performance were: (a) the legal construction of the lease as to whether it was a lease with an incidental right of purchase, or whether it was a contract of purchase with a right vested in the lessee to comply at any time, whether in default or not; (b) whether or not the five acres of land included in the lease had been returned by the Chatmans at an agreed price or not. And because the evidence as a whole taken in connection with the good character of the defendant, which was proven in the case, was totally insufficient to support a verdict of guilty.

"And because the statute under which the defendant was tried, to wit: Section 373, is unconstitutional, the same being contrary to the provisions of article II., section 20, of the Constitution of 1868, and of Article III., Section 17, of the Constitution of 1895, in that the title of said act relates to 'Forgery and Offenses against the Currency,' and provides for the punishment of crimes already existing, to wit: the crimes of forgery and of offenses against the currency, but the body of the act provides a punishment for persons 'willingly acting or assisting in the false making, forging or

counterfeiting of any writing or instrument of writing, or of uttering, or publishing as true, any false, forged or counterfeited writing, or instrument of writing;' and that said act, so far as it relates to the uttering as true any false, forged or counterfeited writing, is unconstitutional, null and void.

"And the conviction in this case should not be allowed to stand under a void statute."

*Messrs. Lee & Moise* and *George Johnstone,* for appellant. The former cite: *The indictment charging only uttering and publishing a forged writing, State is only entitled to two peremptory challenges:* Crim. Code, 373; 3 McC., 444; 11 Ency., 2 ed.; 1102; 13 Ency., 2 ed., 1082; 3 Stat., 470; 5 Stat., 397; 11 Stat., 341; Rev. Stats., 1872, 722; 8 Rich., 17; Gen. Stat., 1882, 2527; Rev. Stat., 1893, 395; 23 Stat., 963; 2 Bish., 2 ed., sec. 609; 3 Sim. U. S., 282; 68 S. C., 564, 148. *Was there any evidence of criminal intent:* Burr. Cir. Ev., 283-4; 97 Mass., 567; 2 Stark. on Ev., 739; Ram. on Facts, 18, 285; 4 Dutch, 28; 71 Ala., 377; 2 Strob., 77; 9 Vt., 176. *Intent to defraud is essential to make out the crime:* Austin on Jur., 3d Eng. ed., 441; 49 N. Y., 137; 1 Bish. Cr. Proc., 3d ed., secs. 1107-8; 60 N. Y., 221; 1 N. W., 702; 1 Crim. Law Mag., 668; 97 Pa., 20; Clark's Crim. Law, 44, 45; 1 Bish. Crim. Law, sec. 285, 287; 26 Me., 312.

*Solicitor John S. Wilson,* contra (oral argument).

The opinion in this case was filed October 11, 1905, but remittitur held up on petition for rehearing until

October 30, 1905. The opinion of the Court was delivered by

MR. JUSTICE GARY. The indictment under which the defendant was convicted, charged that he "did wilfully and falsely utter and publish as true, a certain false, forged and counterfeited writing, and instrument of writing, commonly called a lease of land, of the tenor as follows: * * * He, the

said George W. Murray, then and there, well knowing the same to be forged, with intent to defraud Scipio Chatman and James Chatman." \* \* \*

The exceptions will be set out in the report of the case. The first question that will be considered is, whether his Honor, the presiding Judge, erred in allowing the State to challenge peremptorily more than two jurors. The names of the persons composing the jury were drawn and called in the usual manner, and defendant exercised seven challenges and the State exercised two, whereupon the State challenged the third juror, and the defendant objected upon the ground that this was not a charge of forgery, but of uttering a forged instrument, and that sec. 55 of the Criminal Code was not applicable to this case. The Court overruled the objection and allowed the challenge—the State did not exercise more than five challenges.

Section 373 of the Criminal Code is as follows: "Whoever shall be convicted of falsely making, forging or counterfeiting, or causing or procuring to be falsely made, forged or counterfeited, or of wilfully acting or assisting in the false making, forging or counterfeiting, of any writing or instrument of writing, or of uttering or publishing as true any false, forged or counterfeited writing or instrument of writing, or of falsely making, forging, counterfeiting, altering, changing, defacing or erasing, or causing or procuring to be falsely made, forged, counterfeited, altered, changed, defaced or erased, any record or plat of land, or of willingly acting or assisting in any of the premises, with an intention to defraud any person, shall be guilty of forgery, and shall be sentenced to be imprisoned not less than one year or more than seven years, and also to pay such fine as may be judged expedient, at the discretion of the Judge who may try the case."

Section 55 of the Criminal Code provides that any person who shall be arraigned for the crime of forgery shall be entitled to peremptory challenges not exceeding ten; and the State in such cases shall be entitled to peremptory chal-

lenges not exceeding five; persons indicted for other crimes shall be entitled to peremptory challenges not exceeding five, and the State not exceeding two. Uttering or publishing as true any false, forged or counterfeited writing constitutes the crime of forgery, under section 373 of the Criminal Code. It is a kindred form of forgery. It is usual to enact that various illegal acts shall constitute the crime of forgery, as will be seen by reference to the statutes of the different States. The legislature is vested with power to enact such statute.

The next question for consideration is whether section 373 of the Criminal Code is unconstitutional, on the ground that the title and body of the statute do not correspond. We have failed to find in the record where the Circuit Judge ruled, or was requested to rule, upon this question. The assignment of error cannot, however, be sustained. The words "Forgery and Offenses against the Currency" do not form the title of an act, but are merely inserted in the Criminal Code, for convenience in indicating the subject matter of that chapter.

The remaining exceptions raise the question whether there was any testimony tending to sustain the allegations of the indictment that were put in issue and contested by the defendant. In order to constitute forgery by uttering or publishing a forged instrument of writing, three important factors are requisite: 1. It must be uttered or published as true and genuine. 2. It must be known by the party uttering or publishing it as false, forged or counterfeited. 3. It must be with intent to prejudice, damage or defraud another person.

We will first consider whether there was any testimony to the effect that it was uttered or published by the defendant as true and genuine. It was offered in evidence by the defendant upon the trial of the action for specific performance of contract, instituted against him by Scipio Chatman and James Chatman, and he testified that it was genuine.

The next question for consideration is whether there was

33—72

any testimony tending to prove that the defendant knew that the writing uttered or published was false, forged or counterfeited. There is abundance of testimony to the effect that said writing was forged. James Chatman testified that he did not sign the lease. Scipio Chatman testified that James Chatman did not sign it on the 4th of November, 1899, while he and James were at the house of defendant when the negotiations for the lease or purchase of the land were consummated. Marion W. Cato, who witnessed the agreement, signed in duplicate by Scipio Chatman and George W. Murray, testified that he did not sign his name as a witness to the instrument of writing set out in the indictment, which purports to have been signed by George W. Murray and James Chatman, and witnessed by him. Witnesses testified that there was only one kind of ink used by Murray and others, when the papers were signed on the 4th of November, 1899, and it was black, yet the alleged forged instrument was written in blue ink, and on white paper, while the duplicate writing signed by the defendant and Scipio Chatman was on blue paper. E. F. Miller testified that he printed the blank on which the lease in question was written along with others, for the defendant, during the early part of the year 1900. On those blanks then printed, appear the numbers "190   " in two places. It is at least a reasonable inference from these facts, that the defendant knew the writing was forged.

The next question that will be considered is whether there was testimony tending to show that the writing was uttered with a fraudulent intent. In 2 Bish. Cr. Procedure, section 428, it is said: "that the defendant made false representations at the time of the uttering; that he fabricated a disposition to prove the forged writing genuine; that his statements concerning the source whence he obtained it have been contradictory, and other like equivocations and suspicious doings, may be shown against him."

In 9 Enc. of Pl. and Pr., 561, we find the following: "It is not necessary to state how the instrument could have been used for the purpose of fraud; it is enough if it appear from

the character of the instrument, together with the provisions of the statute, 'that it might have been so used in connection with other facts, real or simulated, either then existing, or with which it was to be afterwards connected." This is quoted with approval in *State* v. *Bullock,* 54 S. C., 300, 32 S. E., 424.

The rule is thus stated in *The State* v. *Fuller,* 1 Bay, 245, 246: "In the present case, the indictment states, *that the note was passed knowing of the forgery, with intent to defraud.* The verdict finds the *uttering, knowing of the forgery.* The facts which constitute the offense are here found. The intent is only matter of circumstance, which naturally follows and springs out of the facts. No other than a *fraudulent* intent can be inferred, when a man makes or passes a false deed, as and for a true one. The law will presume as in the foregoing cases (*in odium fraudis*), that it was done with a fraudulent intention." The defendant testified that he did not know until the proceedings for specific performance were commenced, that the parties claimed that only one of them had signed the contract; and afterwards, when he found out that only one had signed, he mentioned it in his answer.

The following appears in the testimony of the defendant: "Q. You have stated that up to the time these proceedings were started, you thought both these parties signed the contract? A. Yes, sir. Q. And when this complaint was served and you saw only Scipio Chatman had signed this contract, you began to look up your papers, and you found that paper signed by James Chatman? A. Yes, sir. Q. And you set up in your answer that Scipio Chatman didn't make any contract with you, but that James Chatman did so, and that he had abandoned the land and gone away? A. Yes, sir, and so he had."

Also the following: "Well, you have stated to the counsel that when you swore out this notice and affidavit to turn these people off, that you swore it out as having been a contract with the two of them? A. Yes, sir. Q. And after-

wards when you found only one had signed, you mentioned it in your answer? A. Yes, sir."

Marion W. Cato testified that the defendant approached him about testifying in the case, and said he wanted him to say he witnessed "those papers."

The testimony tended to prove that there was a scheme on the part of the defendant, to show that only James Chatman signed the lease, and that he had abandoned the land and gone away. This would have been prejudicial to the rights of Scipio Chatman. The question whether there was a fraudulent intent depended upon all the facts and circumstances of the case, and we are unable to say that the verdict is without any testimony to support it.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

PER CURIAM. October 30, 1905. After careful consideration of the petition herein, the Court is satisfied that no material question of law has been either overlooked or disregarded.

It is, therefore, ordered, that the petition be dismissed and that the order heretofore granted staying the remittitur be revoked.

*The* CHIEF JUSTICE *did not participate in this opinion because of illness.*