713 S.E.2d 591

The STATE, Respondent,

v.

Donald M. BRANDT, Appellant.

No. 27014.

Supreme Court of South Carolina.

Heard Nov. 3, 2010.
Decided July 25, 2011.

528

James M. Griffin and Margaret N. Fox, both of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General

Salley W. Elliott and Assistant Attorney General Mark R. Farthing, all of Columbia, for Respondent.

Daniel A. Speights, C. Alan Runyan and A. Gibson Solomons, all of Speights & Runyan, of Hampton, for Amicus Curiae Elizabeth K. Gooding.

Justice BEATTY.

After Donald M. Brandt produced a fraudulent document in a civil proceeding, a circuit court held Brandt in civil and criminal contempt. In turn, the court dismissed Brandt's legal malpractice action with prejudice and ordered him to serve six months in jail and pay the defendants' attorneys' fees and costs in the amount of $883,621.93.

Subsequently, based on the fraudulent document, the State indicted Brandt for forgery in an amount greater than $5,000.[1] After a jury found Brandt guilty of the indicted offense, the trial judge sentenced Brandt to ten years' imprisonment, suspended upon the service of four years, followed by five years' probation and payment of restitution in the amount of $883, 621.93. Brandt appeals his forgery conviction and sentence. We affirm in part, reverse in part, and remand.

## I. Factual/Procedural Background

### A. Legal Malpractice Action

In 1998, Brandt sued Elizabeth K. Gooding and her law firm Gooding & Gooding, P.A. (collectively "Gooding") for legal malpractice based on Gooding's representation of him in a real estate transaction. During the course of discovery, Brandt presented to his attorney a document (the "Edisto Farm letter"), which appeared to have been sent by Ronald L. Summers, the Senior Vice President of Edisto Farm Credit (the lender in the transaction) to Brandt on September 18, 1995. Brandt also provided the letter to his malpractice expert. The letter was then introduced in the expert's deposition and used by him to opine that Gooding had committed malpractice.

The document, if authentic, would have imputed knowledge to Gooding of a conflict of interest related to the representa-

---

1. S.C.Code Ann. § 16–13–10(A)(2) (2003).

tion of Brandt in the real estate transaction. Gooding, however, claimed the document was fraudulent. As a result, Gooding requested a hearing to determine whether the document was authentic. Additionally, Gooding requested the court hold Brandt in contempt and award costs if such authenticity could not be established. Circuit Court Judge Diane Goodstein delayed a contempt hearing until it could be determined whether the document was authentic.[2]

In subsequent motions before Circuit Court Judge Paul M. Burch, Gooding moved for summary judgment, dismissal of the legal malpractice action, and contempt. At the hearing on these motions,[3] Gooding presented an expert in document examination and authenticity who opined that the letter was fraudulent.

At the conclusion of the hearing, Judge Burch found Brandt in contempt for committing fraud on the court. As a result, he dismissed Brandt's Complaint as a sanction and granted summary judgment in favor of Gooding. Judge Burch also held Brandt in criminal contempt for perpetrating a fraud upon the court and sentenced him to six months' imprisonment.

Approximately one month later, Judge Burch held a hearing regarding additional sanctions against Brandt. By order dated January 9, 2002, Judge Burch memorialized his earlier oral ruling regarding contempt and the concomitant sanctions.

On appeal, this Court affirmed Judge Burch's grant of summary judgment to Gooding and his findings of civil and criminal contempt. *Brandt v. Gooding*, 368 S.C. 618, 629, 630 S.E.2d 259, 264 (2006).

---

2. At this hearing, Judge Goodstein granted Brandt's counsel's motion to be relieved and gave Brandt sixty days to retain new counsel.

3. Brandt was accompanied by an attorney who informed the court that he had agreed to represent Brandt for the limited purpose of obtaining access to the disputed letter for testing by Brandt's expert. He further explained that he had a conflict and could no longer represent Brandt. After addressing the limited issue and making the letter a court exhibit, the judge dismissed the attorney from the proceedings. Brandt claimed he could not find anyone else to represent him and, thus, proceeded without counsel for the remainder of the proceedings.

Following the issuance of this Court's opinion, Judge Burch held a hearing to establish the amount of attorneys' fees and costs that should be awarded under the prior contempt order of January 9, 2002. On August 13, 2007, he entered an order that required Brandt to pay $255,353.44 to Gooding & Gooding, P.A. and $628,268.49 to Elizabeth K. Gooding.

On appeal, this Court reversed Judge Burch's award to Gooding on the ground there was no competent evidence to support the finding that Gooding incurred any attorneys' fees and costs. *Brandt v. Gooding,* Op. No.2010–MO–010 (Sup.Ct. filed Apr. 12, 2010). As to Gooding & Gooding's award, this Court modified the award holding that the law firm was only entitled to "those fees and costs incurred by Respondent law firm from the date Brandt introduced the fraudulent letter (April 4, 2001) to the date the trial court denied Brandt's motion for reconsideration (May 16, 2002)[and] were directly related to Brandt's introduction of the letter." *Brandt,* slip op. at 2. As a result, we modified the circuit court's order so as to award $80,547.89, plus applicable interest accrued to Gooding & Gooding. *Id.*

## B. Forgery Conviction

During the pendency of the above-outlined proceedings, a Charleston County grand jury indicted Brandt for forgery in an amount greater than $5,000 based on the September 18, 1995 Edisto Farm letter.

In the course of Brandt's jury trial, which was conducted by Circuit Court Judge Roger M. Young, the State presented testimony regarding the underlying real estate transaction, the legal malpractice action, and the authenticity of the Edisto Farm letter.

In terms of the real estate transaction, Gooding testified she performed the closing for an Aiken real estate transaction involving Brandt and the Lombard Corporation, whose partners included Don Houck and Johnny Godley. The actual closing took place on December 14, 1995. According to Gooding, she learned of Brandt's involvement only a few weeks before the closing. Gooding acknowledged that Brandt had filed a legal malpractice claim against her primarily on the ground that Gooding had failed to properly protect his interest

in the land deal. Gooding disputed Brandt's claim on the basis that she had not been aware that Brandt was a party to the transaction until shortly before the December 1995 closing date. When presented with the September 18, 1995 Edisto Farm letter,[4] Gooding claimed she had not been hired by Brandt by the date of the letter, nor was it her job to secure financing from Edisto Farm Credit. Had the letter been true, Gooding testified that "[i]t would have established my connection with Mr. Brandt in this matter and this transaction almost three months before I had any knowledge of him being involved." She further testified the letter contradicted the sworn testimony she had given in a deposition regarding the legal malpractice case.

Lawrence Richter, Jr., Brandt's attorney who filed the legal malpractice action, testified Brandt came to him alleging that Gooding had "purported to represent all three (Brandt, Godley, and Houck) but did not represent them equally. She did not protect [his] rights in the same way that the other two members' rights were protected."

Because one of the key issues in dispute concerned Gooding's knowledge of when Brandt became involved in the land transaction, Richter deposed Gooding, Brandt, and Summers. Richter also retained Professor John Freeman as an expert witness to support Brandt's claim of Gooding's malpractice.

Richter testified that on December 27, 2000, he and his law partner met with Brandt and Freeman regarding the case. During the meeting, Brandt produced a faxed copy of a letter he claimed to have just discovered in his home. The letter was dated September 18, 1995, was on Edisto Farm Credit letterhead, and was purportedly signed by Summers. Subsequently, the letter was introduced into the case for the first time during Freeman's deposition in April 2001. When Gooding's counsel questioned the authenticity of the letter, Richter believed it was necessary to retain a professional examiner to authenticate the document. Brandt, however, directed Richter not to have the document examined.

---

4. The body of the letter indicated that Gooding had been hired by Brandt, confirmed that she was aware of Brandt's involvement in the land deal, and that she was responsible for securing financing from Edisto Farm Credit on behalf of Brandt.

Richter acknowledged the letter significantly impacted the case against Gooding in that the date of the letter "together with the statements in the letter, would have supported Mr. Brandt's version of the facts that Ms. Gooding knew very early on of his involvement in the real estate transaction in issue, and it would have been a statement to that effect by somebody else other than Mr. Brandt." Assuming the letter to be accurate and true, Richter believed it would have substantially increased the value of Brandt's case, "far more than $5,000."

In April 2001, Marvin Dawson, a private document examiner, analyzed the letter produced by Brandt and concluded the signature on the letter was not genuine. Dawson further determined that the letter was not produced on the computer or typewriter used by the secretary at Edisto Farm Credit, was not sent from the fax machine at Edisto Farm Credit, did not have a watermark like other Edisto Farm Credit paper, and had microscopic security dots, which represented technology that post-dated the letter.

After Dawson's review, the letter was sent to the United States Secret Service for further analysis. Susan Fortunato, a document analyst for the Secret Service, analyzed the Edisto Farm letter. During her examination of the letter, Fortunato discovered a serial number in a pattern of yellow dots. Based on these dots, Fortunato determined that the letter had been produced on December 10, 2000 around 3:00 p.m. using a Xerox machine with the serial # 043391 located at a Kinko's copy shop in Augusta, Georgia. Fortunato also learned that the copy machine was not installed in the Kinko's shop until January 6, 2000. Because the pattern of yellow dots did not exist until 2000, Fortunato definitively testified that the document "didn't exist until the year 2000."

In addition to the testimony of the document examiners, the State presented the testimony of Summers and Dell Murdaugh, the administrative loan assistant who prepared the documents for the real estate loan.

Murdaugh testified that between 1995 and 2000 she typed all the correspondence for Summers and assisted in preparing loan documents. Although it was customary to retain copies of all correspondence, Murdaugh testified there was not a

copy of the September 18, 1995 letter in her file. Murdaugh also believed the letter was false in that it was missing the typist's initials, was not formatted like the standard documents, and had different spacing and wording than normally used. Additionally, Murdaugh testified she had reviewed the Edisto Farm Credit telephone records and determined there were no calls made to Brandt on the date of the faxed letter.

Summers also testified the letter was a forgery as he did not dictate, write, or sign the letter. He further noted there was no copy of the letter in his files. In terms of the text of the letter, Summers stated the letter conflicted with his understanding of the transaction and the terminology was inconsistent with the typical manner in which loans were handled by Edisto Farm Credit.

The State presented Professor Freeman as its final witness. Freeman recounted the December 27, 2000 meeting where he was apprised of the Edisto Farm letter. Freeman believed the letter was "very, very significant" and strengthened Brandt's credibility given the date of the letter and the fact that it was purportedly written by a third party. He further testified the document "harkens back to September," was "consistent with the Brandt story," and was the "very opposite of what Beth Gooding has said under oath." In terms of the effect of the letter, Freeman opined that it "took the probability of winning (the lawsuit), way up," and substantially increased Brandt's potential for recovery more than $5,000.

At the close of the State's case, Brandt moved for a directed verdict and renewed his pre-trial motions, which included a motion to dismiss on Double Jeopardy grounds. Judge Young denied all of Brandt's motions.

After Brandt's counsel indicated that the defense would not present any evidence, Judge Young held a charge conference. During the conference, Brandt's counsel requested a number of jury instructions, including an instruction on "legal efficacy" related to the evidentiary value of the Edisto Farm letter. Judge Young denied the request to charge because he was "not aware that [the instruction] would be a correct [statement of] South Carolina law." In response, Brandt's counsel claimed that "South Carolina laws have not addressed this issue."

Ultimately, the jury convicted Brandt of forgery in an amount greater than $5,000. Following the verdict, Judge Young delayed the imposition of the sentence to allow for the preparation of a pre-sentence report and to allow time for any restitution issues to be addressed.

Brandt filed post-trial motions, which included a motion for a new trial on the ground the Edisto Farm letter lacked "legal efficacy" and there was insufficient evidence presented as to the value of the letter. Judge Young denied each of Brandt's post-trial motions.

On September 11, 2009, Judge Young held a sentencing hearing. During the hearing, the parties indicated that no restitution agreement had been reached. At the conclusion of the hearing, Judge Young ordered restitution in the amount of $883,621.93. He then sentenced Brandt to ten years' imprisonment, suspended upon the service of four years, followed by five years' probation and payment of restitution.

Following the denial of his motion for reconsideration, Brandt appealed his conviction and sentence to the Court of Appeals. This Court certified this appeal pursuant to Rule 204(b), SCACR.

## II. Discussion

### A. Double Jeopardy

■ Brandt contends the trial judge erred in failing to dismiss the forgery indictment and in failing to grant his motion for a directed verdict on the ground that Double Jeopardy barred the forgery prosecution. Because Brandt had previously been convicted of criminal contempt based on the Edisto Farm letter, he claims the Double Jeopardy Clause of the United States and South Carolina Constitutions prohibited the successive forgery prosecution for the same offense.[5]

---

5. Following this Court's decision affirming Brandt's conviction for criminal contempt, Brandt filed a petition for writ of habeas corpus in the United States District Court for the District of South Carolina. Ultimately, the federal district court ruled in favor of Brandt on the grounds that Brandt was denied his constitutional rights to notice, counsel, and an opportunity to be heard on the charge of criminal contempt. *Brandt v. Ozmint*, 664 F.Supp.2d 626 (D.S.C.2009). On appeal, the Fourth Circuit Court of Appeals affirmed the district court's

In support of his position, Brandt primarily relies on the United States Supreme Court case of *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), a case in which the Supreme Court held that Double Jeopardy protection applies to non-summary criminal contempt prosecutions as it does in other criminal prosecution s.[6]

Brandt raised his Double Jeopardy claim in his pre-trial motions and his motion for a directed verdict. In denying Brandt's motion, the trial judge stated:

But there are two parts to double jeopardy. There is the same conduct, which I find, [its] the same conduct, but under the statute for forgery, there is no requirement that the forged document be introduced into a legal proceeding. So as I see it, the moment that [Brandt] produced that, theoretically, to his lawyers, he procured the use of it, and that, in and of itself right there, would support a forgery conviction, even though it perhaps never got used in the legal proceeding. So in my mind, at least, that is what—it doesn't meet the second element of double jeopardy, and that is the same elements, the *Blockburger* test, if you will.

order. *Brandt v. Ozmint,* 636 F.3d 124 (4th Cir.2011). Because the federal proceedings effectively vacate the prior conviction, Brandt can no longer assert that his forgery prosecution was barred by Double Jeopardy. However, in the event the Fourth Circuit's decision is reversed, we have addressed the merits of Brandt's arguments.

**6.** In *Dixon,* the Supreme Court considered two cases in which the defendants, Dixon and Foster, had been tried for criminal contempt for violating court orders that prohibited them from engaging in conduct that was the subject of later criminal prosecutions. *Dixon,* 509 U.S. at 691–92, 113 S.Ct. 2849. In analyzing these cases, the Court overruled *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), a decision that added the "same conduct" test to the *Blockburger* analysis. *Id.* at 704, 113 S.Ct. 2849. Although the Court reinstated *Blockburger* as the exclusive means of determining whether two charges are the same for Double Jeopardy purposes, there was no majority opinion as to the appropriate method of application. Essentially, two opposing factions emerged from the opinion. Chief Justice Rehnquist adhered to a strict application of the *Blockburger* "same elements test." *Id.* at 713–14, 113 S.Ct. 2849. In contrast, Justice Scalia compared the elements of the offenses based on a "lesser-included offense" analysis, finding that the substantive criminal offense was "a species of lesser-included offense" of the judicial order that had been violated and formed the basis of the criminal contempt conviction. *Id.* at 700–03, 113 S.Ct. 2849.

We agree with the trial judge that the Double Jeopardy Clause did not bar the State's prosecution of Brandt for forgery. Although our reasons will be more fully discussed, we hold the trial judge's decision is correct because: (1) the facial similarities of *Dixon* to Brandt's case do not render *Dixon* dispositive; (2) our appellate courts, in post-*Dixon* decisions, have repeatedly employed the "same elements test" in analyzing purported Double Jeopardy violations; and (3) the elements for the offenses of criminal contempt and forgery are decidedly different and, thus, constitute separate and distinct offenses.

The Double Jeopardy Clauses of the United States and South Carolina Constitutions operate to protect citizens from being twice placed in jeopardy of life or liberty for the same offense. The United States Constitution, which is applicable to South Carolina via the Fourteenth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. Similarly, the South Carolina Constitution states: "No person shall be subject for the same offense to be twice put in jeopardy for life or liberty...." S.C. Const. art. I, § 12.

■ In interpreting the Double Jeopardy clause, this Court has stated that "[t]he Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal or conviction, and protects against multiple punishments for the same offense." *Stevenson v. State*, 335 S.C. 193, 198, 516 S.E.2d 434, 436 (1999). "A defendant may be severally indicted and punished for separate offenses without being placed in double jeopardy where a single act consists of two 'distinct' offenses." *State v. Moyd*, 321 S.C. 256, 258, 468 S.E.2d 7, 9 (Ct.App.1996).

"The United States Supreme Court and the South Carolina Supreme Court have determined that in the context of criminal penalties, the *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) 'same elements' test is the sole test of double jeopardy in successive prosecutions and multiple punishment cases." *State v. Cuccia*, 353 S.C. 430, 438, 578 S.E.2d 45, 49 (Ct.App.2003) (citing *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), and *State v. Easler*, 327 S.C. 121, 489 S.E.2d 617 (1997)); *see*

*State v. Elders,* 386 S.C. 474, 481, 688 S.E.2d 857, 861 (Ct.App. 2010) ("In both multiple punishment and successive prosecution cases, double jeopardy claims are evaluated under the 'same elements' test set forth in *Blockburger v. United States,* 284 U.S. 299 [52 S.Ct. 180, 76 L.Ed. 306] (1932)").

 "Under traditional double jeopardy analysis, multiple punishment is not prohibited where each offense calls for proof of a fact that the other does not." *Cuccia,* 353 S.C. at 438, 578 S.E.2d at 49; *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180 (stating "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not"). "Under the *Blockburger* test, a defendant may be convicted of two separate crimes arising from the same conduct without being placed in double jeopardy where his conduct consists of two distinct offenses." *Elders,* 386 S.C. at 482, 688 S.E.2d at 861 (citations omitted). An application of the *Blockburger* test "requires a technical comparison of the elements of the offense for which the defendant was first tried with the elements of the offense in the subsequent prosecution." *Moyd,* 321 S.C. at 258, 468 S.E.2d at 9.

In his argument, Brandt seizes upon the divided opinion in *Dixon* to support his claim that Double Jeopardy bars his forgery prosecution. In particular, he disregards Chief Justice Rehnquist's "literal same-elements analysis," and instead advocates an application of Justice Scalia's "lesser-included offense" method of analysis. As we interpret Brandt's arguments, he applies the "same elements test" by essentially comparing the underlying conduct between the offenses of criminal contempt and forgery.

We, however, need not choose between the divergent views of Chief Justice Rehnquist and Justice Scalia as this case does not involve a violation of a court order as in *Dixon.* Furthermore, even if we were to choose between the two views, we find this state's post-*Dixon* jurisprudence definitively establishes that our courts have adopted a traditional, strict application of the *Blockburger* "same elements test."

In order to apply the *Blockburger* analysis, it is necessary to examine the individual elements of the criminal contempt conviction and the forgery offense.

The offense of forgery is codified in section 16–13–10 of the South Carolina Code, which provides: "It is unlawful for a person to utter or publish as true any false, forged, or counterfeited writing or instrument of writing." S.C.Code Ann. § 16–13–10(A)(2) (2003). In interpreting this code section, our appellate courts have found that "[t]he three important factors requisite to constitute forgery by uttering or publishing a forged instrument are: (1) it must be uttered or published as true or genuine, (2) it must be known by the party uttering or publishing it that it is false, forged, or counterfeited, and (3) there must be intent to prejudice, damage, or defraud another person." *State v. Wescott*, 316 S.C. 473, 477, 450 S.E.2d 598, 601 (Ct.App.1994) (citing *State v. Singletary*, 187 S.C. 19, 196 S.E. 527 (1938)).

In terms of criminal contempt, this Court affirmed Brandt's contempt conviction, stating:

> Direct contempt involves contemptuous conduct in the presence of the court. *State v. Kennerly*, 337 S.C. 617, 620, 524 S.E.2d 837, 838 (1999). A person may be found guilty of direct contempt if the conduct interferes with judicial proceedings, exhibits disrespect for the court, or hampers the parties or witnesses. *State v. Havelka*, 285 S.C. 388, 389, 330 S.E.2d 288 (1985). Direct contempt that occurs in the court's presence may be immediately adjudged and sanctioned summarily. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827, 114 S.Ct. 2552, 129 L.Ed. [L.Ed.2d] 642 (1994).

*Brandt*, 368 S.C. at 628, 630 S.E.2d at 264. Applying these principles to Brandt's case, this Court concluded:

> In the present case, the record shows that Brandt presented a fraudulent document to the court. The document was introduced at the deposition of Professor John Freeman. In addition, the deposition was introduced into evidence in the case as an attachment to his Memorandum in Support of Motion for Reconsideration. Further, the record shows that Brandt was the sole cause of the introduction of the document into this case when he provided a supplemen-

tal response to the request to produce one day before Professor Freeman's deposition. We hold that the introduction of the document into the deposition constituted an introduction of the document into the presence of the court, warranting a citation for direct contempt.

*Id.* at 628–69, 630 S.E.2d at 264.

We find each offense requires proof of a fact that the other does not. Specifically, the offense of forgery does not require any interference with judicial proceedings that is "calculated to obstruct, degrade, and undermine the administration of justice." *Brandt*, 368 S.C. at 628, 630 S.E.2d at 264. In comparison, the commission of criminal contempt does not require the "uttering or publishing of a fraudulent document."

Accordingly, Brandt's subsequent prosecution for forgery did not violate the Double Jeopardy Clause as the prior criminal contempt conviction involved decidedly different elements. *Cf. State v. Pace*, 337 S.C. 407, 417, 523 S.E.2d 466, 471 (Ct.App.1999) (concluding that Double Jeopardy did not bar convictions for both forgery and insurance fraud, based on a forged "Affidavit of Total Theft of a Motor Vehicle" that was submitted to insurer "[b]ecause each offense contains at least one element which must be proven by an additional fact that the other does not require"); *see* Jay M. Zitter, Annotation, *Contempt Finding as Precluding Substantive Criminal Charges Relating to the Same Transaction*, 26 A.L.R.4th 950, 952 (1983 & Supp.2010) (discussing state and federal cases where courts have ruled that double jeopardy safeguards were not involved where a defendant found in contempt is later prosecuted under penal statutes for the same actions; recognizing in those cases that "the purpose of contempt citations is to maintain the dignity of and respect for the court and court proceedings, while the purpose of criminal charges is to punish violators of society's norms").

## B. Directed Verdict Motion

Brandt asserts the trial judge erred in denying his motion for a directed verdict where the State failed to produce evidence to establish that: (1) the forged letter had "legal efficacy"; (2) Brandt knew the letter was forged and presented it with intent to defraud; and (3) the value of the forged letter was $5,000 or more.

"If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury." *State v. Weston*, 367 S.C. 279, 292–93, 625 S.E.2d 641, 648 (2006). When reviewing a denial of a directed verdict, an appellate court views the evidence and all reasonable inferences in the light most favorable to the State. *Id.* at 292, 625 S.E.2d at 648. The trial court should grant a directed verdict when the evidence merely raises a suspicion that the accused is guilty. *State v. Hernandez*, 382 S.C. 620, 625–26, 677 S.E.2d 603, 605–06 (2009). A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. Ladner*, 373 S.C. 103, 120, 644 S.E.2d 684, 693 (2007).

As will be discussed, we find the trial judge correctly denied Brandt's motion for a directed verdict. Viewing the evidence in the light most favorable to the State, there was sufficient evidence to submit the offense of forgery to the jury.

### (1). "Legal Efficacy"

As to this ground, Brandt contends the Edisto Farm letter lacks legal efficacy because it could not have served as the foundation for the legal liability of Elizabeth Gooding or her law firm. In support of his argument, Brandt cites the Court of Appeals' decision in *State v. Lee–Grigg*, 374 S.C. 388, 649 S.E.2d 41 (Ct.App.2007), *aff'd*, 387 S.C. 310, 692 S.E.2d 895 (2010). Specifically, Brandt directs the Court's attention to the following language:

To constitute forgery, it is essential that the falsely made or altered instrument possess some apparent *legal efficacy;* otherwise it would have no tendency to defraud. As long as a forged instrument is the apparent foundation of legal liability, the instrument need not be complete in all its particulars to amount to forgery.

*Id.* at 402, 649 S.E.2d at 48 (citations omitted) (emphasis added).

Additionally, Brandt avers the letter did not have legal efficacy to support the forgery conviction as its sole value was to provide evidence in the civil lawsuit. Because Brandt believes he had a viable claim for legal malpractice "irrespec-

tive" of the letter, he asserts the letter had no legal efficacy. Brandt explains that Gooding's conduct, and not the letter, served as the basis for instituting his legal malpractice claim.

In support of these contentions, Brandt relies on three out-of-state cases [7] and the following provision from *Corpus Juris Secundum:*

The element of forgery requiring that the defendant has falsely made or altered an instrument purporting to have "legal efficacy" does not include instances where the sole legal value of the instrument is its potential use as evidence.

37 C.J.S. *Forgery* § 6 (Supp.2010).

We find Brandt's arguments fail for several reasons. Initially, Brandt employs an overly-narrow interpretation of the legal efficacy element. Because this case involves a letter, as opposed to a traditionally-forged negotiable document such as a check, Brandt attempts to negate the forgery conviction on the ground a forged letter could not directly and definitively establish Gooding's duty to Brandt.

Our appellate courts' decisions, including *Lee–Grigg,* have taken a broad approach as to what type of document can constitute the basis of a forgery conviction and the requisite effect the document must have on the alleged forgery victim.

In terms of the types of documents involved in forgery, our appellate courts have not limited a conviction solely to negotia-

---

7. *See State v. Cearley,* 135 N.M. 710, 92 P.3d 1284 (N.M.Ct.App.2004) (concluding photocopies of altered non-carbon records of checks, tendered by defendant in civil action, were not instruments purporting to have legal efficacy); *State v. Scott,* 144 N.M. 231, 185 P.3d 1081 (N.M.Ct.App.2008) (reversing forgery conviction based on fraudulent doctor's note used as an excuse for missing a scheduled court hearing; finding the fraudulent document did not have legal efficacy given it merely had potential evidentiary value); *Gooch v. State,* 249 Ala. 477, 31 So.2d 776 (1947) (concluding a "Sunday-dated" check, without extrinsic facts showing its legal efficacy, could not support a forgery conviction).

We find the cases cited by Brandt are distinguishable from the instant case. First, the New Mexico forgery statute specifically includes the term "legal efficacy." N.M. Stat. Ann. § 30–16–10 (Supp.2010). Secondly, based on our research, the New Mexico cases and the Alabama case reflect a minority view as it does not appear that other jurisdictions have taken such a limited approach in analyzing the offense of forgery. Furthermore, as will be discussed, these cases are inconsistent with our state's jurisprudence regarding forgery.

ble instruments nor have the courts precluded a conviction where the forged document served as an evidentiary basis in a civil trial. *See, e.g., State v. Floyd,* 36 S.C.L. (5 Strob.) 58 (1850) (considering conviction involving a forged receipt that was used in the defense of the underlying civil suit; stating "[m]any statutes have been passed ... to enlarge the range of the common law as to the description of instruments that should be protected against the cunning perpetrators of this offence" to forge); *State v. Murray,* 72 S.C. 508, 52 S.E. 189 (1905) (affirming forgery conviction involving a lease that defendant had offered into evidence in a civil case for specific performance of the contract); *State v. Zimmerman,* 79 S.C. 289, 60 S.E. 680 (1908) (affirming forgery conviction involving a false entry made in a public record with intent to deceive and defraud).

Furthermore, the requisite prejudicial effect of a document in a forgery proceeding has been broadly construed by our appellate courts. *See Lee–Grigg,* 374 S.C. at 402, 649 S.E.2d at 48 (discussing legal efficacy of a forged instrument and stating, "Any writing that may defraud or prejudice another, or that, if genuine, would have legal effect or operate as the foundation of another man's liability may be the subject of forgery. It is sufficient if the forged instrument, believed to be genuine, might have operated to the prejudice of another."); *State v. Webster,* 88 S.C. 56, 58, 70 S.E. 422, 423 (1911) ("The purpose of the statute against forgeries is to protect society against fabrication, falsification, and the uttering, publishing, and passing of forged instruments, which, if genuine, would establish or defeat some claim, impose some duty, or create some liability, or work some prejudice in law to another, in his right of person or property." (citations omitted)); *see also State v. Bullock,* 54 S.C. 300, 311–12, 32 S.E. 424, 428–29 (1899) ("It is not necessary to state how the instrument could have been used for the purpose of fraud. It is enough if it appears from the character of the instrument, together with the provisions of the statute, that it might have been so used in connection with other facts, real or simulated, either then existing, or with which it was to be afterwards connected." (citation omitted)).[8]

---

8. Additional support for this position may be found in the decisions of other jurisdictions. *See People v. Cunefare,* 102 P.3d 302, 308–09

Applying our appellate courts' broad interpretation of forgery, we conclude the State presented sufficient evidence of this element to withstand Brandt's motion for a directed verdict as to the legal efficacy of the Edisto Farm letter.

Gooding testified the letter, if found to be true, would have established her connection with Brandt almost three months before she had knowledge of him being involved in the land transaction. Equally important, Gooding testified the letter would have contradicted her sworn deposition testimony. Gooding also stated that "everyone has pointed to that letter from the very beginning as some evidence of [her] culpability."

In addition to Gooding, other witnesses testified regarding the significance of the letter. Richter, Brandt's attorney who initiated the legal malpractice claim, confirmed Gooding's assessment that the letter would have significantly impacted the legal malpractice lawsuit. In his testimony, Professor Freeman emphasized that the letter was "very, very significant," affected Gooding's credibility as a witness and, in turn, strengthened Brandt's case against Gooding. Summers, who adamantly denied his signature on the letter, also confirmed the significance of the letter in that it directly contradicted his deposition testimony and would have established Brandt's version of what transpired regarding the land transaction.

Clearly, this testimony established that the forged letter had legal efficacy in that it had the potential of prejudicing or damaging Gooding in the civil lawsuit as well as subjecting her to perjury charges and potential ethical violations.

(Colo.2004) (holding that statute prohibiting forgery encompasses not only forgery of instruments affecting pecuniary interests, but also forgery of instruments having other legal effects); *People v. Muzzarelli*, 331 Ill.App.3d 118, 264 Ill.Dec. 536, 770 N.E.2d 1232, 1235 (2002) (affirming forgery conviction and finding that forged letter submitted by defendant to sentencing court asking for leniency had legal effect as it was capable of affecting the rights or obligations of another; stating "[t]hough property or monetary loss may be the most common forgeries, they are not exclusive"); *see also* R.P. Davis, Annotation, *Invalid Instrument as Subject of Forgery*, 174 A.L.R. 1300, 1304 (1948 & Supp.2010) (discussing cases of the general broad type as to what instruments are the subject of forgery; stating that a generally-accepted definition of forgery is that "the offense consists of the false making or material alteration, with intent to defraud, of any writing which, if genuine, might *apparently* be of legal efficacy or the foundation of a legal liability" (emphasis added)).

### (2). Intent to Defraud

 Brandt claims the trial judge erred in denying his motion for a directed verdict given the State failed to present evidence that Brandt knew the Edisto Farm letter was forged and that he presented it to Richter and Freeman with the intent to defraud Gooding.

Brandt, however, disregards the significant fact that the knowledge and intent to defraud elements of the offense of forgery may be proven by circumstantial evidence. *See Lee-Grigg*, 374 S.C. at 403–04, 649 S.E.2d at 49 (stating "[b]ecause intent is seldom susceptible to proof by direct evidence, the circumstances surrounding the making or uttering of the forged instrument are relevant for establishing the requisite intent"; recognizing that "a person is said to act knowingly if he is aware the result is practically certain to follow from his conduct, whatever his desire may be as to that result" (citations omitted)); *Murray*, 72 S.C. at 515, 52 S.E. at 191 (affirming conviction for forging and uttering a false lease and stating "[t]he intent is only matter of circumstance, which naturally follows and springs out of the facts").

A review of the record reveals the State presented sufficient evidence to establish Brandt's knowledge that the letter was forged and his intent to use the letter to defraud. Through the testimony of Dawson and Fortunato, the State conclusively established that the letter was a forgery. Given that Brandt possessed the document and presented it to his attorney, there is evidence that Brandt had knowledge that the document was forged. *Cf. State v. Orr*, 225 S.C. 369, 374, 82 S.E.2d 523, 526 (1954) ("It is insisted on the part of appellant that there is no evidence tending to prove that he made, or caused to be made, the check here charged to be forged. This would be true but for the rule that one found in the possession of a forged instrument of which he purports to be the beneficiary, and applying it to his own use, must, in the absence of explanation satisfactory to the jury, be presumed to have forged it or to have been privy to its forgery." (citation omitted)).

Furthermore, the circumstances surrounding Brandt's presentation of the letter to his attorney and expert witness are clearly susceptible to the inference that Brandt intended to use the document to defraud. Although extensive discovery

had been conducted following the filing of the 1998 legal malpractice lawsuit, Brandt discovered the document and produced it to his attorney and expert witness in 2000, which was shortly before the key deposition of Freeman. Viewing this evidence in the light most favorable to the State, there is evidence of Brandt's knowledge that the document was a forgery and his intent to defraud. *See Murray*, 72 S.C. at 514, 52 S.E. at 190–91 (finding that where there was an "abundance of testimony to the effect that said writing was forged" . . . "[i]t is at least a reasonable inference from these facts, that the defendant knew the writing was forged").

### (3). Value of the Letter

 Brandt contends the trial judge erred in denying his motion for a directed verdict as the State failed to present evidence that the value of the forged letter was $5,000 or more.

In explaining his denial of Brandt's motion for a directed verdict, the trial judge stated, "I think there is value in the case in excess of $5,000 under the testimony of Mr. Richter and Professor Freeman." We find the judge erred in considering the value of the fraudulent document in the context of a directed verdict motion. As will be discussed, the determination of the value of a forged document is not an element of the offense of forgery. Instead, it should only be a consideration for sentencing purposes after a person has been convicted of forgery.

Section 16–13–10, the code section that outlines the offense of forgery, consists of two subsections. As previously discussed, subsection A outlines the elements of forgery. S.C.Code Ann. § 16–13–10(A)(2) (2003) ("It is unlawful for a person to utter or publish as true any false, forged, or counterfeited writing or instrument of writing."). In conjunction, subsection B outlines the penalties that must be imposed on one who is convicted of forgery. Specifically, this subsection provides in relevant part:

A person who violates the provisions of this section is guilty of a:

(1) felony and, *upon conviction,* must be fined in the discretion of the court or imprisoned not more than ten years, or

both, *if the amount of the forgery is five thousand dollars or more.*

. . .

If the forgery does not involve a dollar amount, the person is guilty of a misdemeanor and, upon conviction, must be fined in the discretion of the court or imprisoned not more than three years, or both.

S.C.Code Ann. § 16–13–10(B)(1) (2003) (emphasis added).[9]

On its face, the Edisto Farm letter does not involve a dollar amount. Moreover, the evidence presented by the State regarding any amount was purely speculative as the testimony indicated the letter would have increased the value of Brandt's claim against Gooding "substantially" more than $5,000 and increased Brandt's "probability of winning" the lawsuit that would have resulted in damages in excess of $5,000. We find this evidence is insufficient to establish a dollar amount. In the absence of a dollar amount, we hold that Brandt could have been found guilty only of a misdemeanor and sentenced to imprisonment for a period of three years or less, ordered to pay a fine, or both.

Based on the foregoing, we find the State presented sufficient evidence to support the trial judge's decision to submit the charge of forgery to the jury. However, because there was insufficient evidence to establish a dollar amount of the Edisto Farm letter, we reverse Brandt's felony sentence. Accordingly, we remand for the circuit court to sentence Brandt for a misdemeanor forgery conviction. *See State v. Brown,* 360 S.C. 581, 597–98, 602 S.E.2d 392, 401 (2004) (holding that when a conviction is reversed due to insufficient evidence, an appellate court may remand a case for sentencing on a lesser-included offense after the court considers the following six factors: (1) the evidence adduced at trial fails to support one or more elements of the crime of which appellant was convicted; (2) the jury was explicitly instructed it could find the defendant guilty of the lesser-included offense and was properly instructed on the elements of that offense; (3)

9. Recently, this code section was amended to change the penalties for forgery. S.C.Code Ann. § 16–13–10 (Supp.2010). Notably, if a person is convicted of a forgery in an amount less than $10,000, he is subject to five years' imprisonment, payment of a fine, or both.

the record on appeal contains sufficient evidence supporting each element of the lesser-included offense; (4) the State seeks a sentencing remand on appeal; (5) the defendant will not be unduly or unfairly prejudiced; and (6) the Court is convinced justice will be served by such a result after carefully considering the record as well as the interests and concerns of both the defendant and the victim of the crime).

## C. "Legal Efficacy" Request to Charge

Brandt claims the trial judge erred in denying the following request to charge: "A document whose sole value is its potential use in a civil lawsuit does not have sufficient 'legal efficacy' to support a forgery charge."

"In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial." *State v. Adkins,* 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct.App.2003). "A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law." *Id.* at 318, 577 S.E.2d at 464. A jury charge which is substantially correct and covers the law does not require reversal. *State v. Foust,* 325 S.C. 12, 479 S.E.2d 50 (1996).

"[T]he trial court is required to charge only the current and correct law of South Carolina." *Sheppard v. State,* 357 S.C. 646, 665, 594 S.E.2d 462, 472 (2004). "The law to be charged must be determined from the evidence presented at trial." *State v. Knoten,* 347 S.C. 296, 302, 555 S.E.2d 391, 394 (2001). "The substance of the law is what must be charged to the jury, not any particular verbiage." *Adkins,* 353 S.C. at 318–19, 577 S.E.2d at 464.

"A request to charge a correct statement of the law on an issue raised by the indictment and the evidence presented at trial should not be refused." *State v. Austin,* 299 S.C. 456, 458, 385 S.E.2d 830, 831 (1989). "However, if the trial judge refuses to give a specific charge, there is no error if the charge actually given sufficiently covers the substance of the request." *Id.* " 'It is error for the trial court to refuse to give a requested instruction which states a sound principle of law when that principle applies to the case at hand, and the principle is not otherwise included in the charge.' " *State v.*

*Williams,* 367 S.C. 192, 195, 624 S.E.2d 443, 445 (Ct.App.2005) (quoting *Clark v. Cantrell,* 339 S.C. 369, 390, 529 S.E.2d 528, 539 (2000)). "If there is any evidence to support a charge, the trial court should grant the request." *Williams,* 367 S.C. at 195, 624 S.E.2d at 445.

"To warrant reversal, a trial judge's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant." *State v. Mattison,* 388 S.C. 469, 479, 697 S.E.2d 578, 583 (2010). A trial judge's failure to give requested jury instructions is not prejudicial error where the instructions given afford the proper test for determining the issues. *Id.* at 479, 697 S.E.2d at 583–84. "An appellate court will not reverse the trial judge's decision regarding a jury charge absent an abuse of discretion." *Id.* at 479, 697 S.E.2d at 584.

Brandt's argument is merely a continuation of his argument regarding the denial of his motion for a directed verdict on the ground the letter lacked "legal efficacy." As previously discussed, we disagree with Brandt's overly-narrow construction of this term. To establish the legal efficacy of a forged document, the State was only required to show that the letter had the potential to prejudice or damage the intended victim. Furthermore, our appellate courts, as previously cited, have upheld forgery convictions where the forged document was used as evidence in a civil trial.

Viewing the judge's charge as a whole, we find it sufficiently covered this element. First, the judge properly instructed the jury on the elements of forgery by using the statutory language of section 16–13–10. Secondly, the judge explained each of the elements individually. Finally, the judge charged the "legal efficacy" element as follows:

> To constitute forgery, it is [essential] that a falsely made or altered instrument [possess] some apparent legal [efficacy]; otherwise, it would have no tendency to defraud. As long as a forged instrument is the apparent foundation of legal liability, the instrument need not be complete [in] all its particulars to amount to forgery, and any writing that may defraud or prejudice another, or that, if genuine, would have legal effect and operate as the foundation of another man's liability may be the subject of forgery. It is sufficient if the

forged documents, believed to be genuine, might have operated to the prejudice of another.

The judge's charge accurately reflects this state's current law regarding the offense of forgery. In fact, the text of the charge tracks the language in *Lee–Grigg*, the case primarily relied upon by Brandt. *Lee–Grigg*, 374 S.C. at 402, 649 S.E.2d at 48. Thus, the judge's denial of Brandt's request to charge does not warrant reversal as the charge as a whole afforded the jury the proper test for determining the issues presented at trial.

### D. New Trial

Brandt contends the trial judge erred in refusing to grant his motion for a new trial where the evidence failed to establish the Edisto Farm letter had legal efficacy and was valued at $5,000 or more. In support of this contention, Brandt reiterates his arguments regarding the trial judge's denial of his motion for a directed verdict.

As previously discussed, the State presented sufficient evidence that the forged letter possessed legal efficacy as there was testimony establishing the prejudicial and damaging effect of the letter to Gooding. Furthermore, the value of the Edisto Farm letter did not affect Brandt's conviction. Thus, any lack of evidence as to its value would not have warranted the grant of a new trial to Brandt. Instead, as we previously ruled, the value of the forged document was only relevant for sentencing purposes. Accordingly, we find the trial judge did not abuse his discretion in denying Brandt's motion for a new trial. *See State v. Johnson*, 376 S.C. 8, 11, 654 S.E.2d 835, 836 (2007) (recognizing that a trial judge has the discretion to grant or deny a motion for a new trial, and his decision will not be reversed absent a clear abuse of discretion).

### III. Conclusion

We find the State presented sufficient evidence to support a forgery conviction. Because the forged document did not involve a dollar amount and the State did not present evidence of a definitive dollar amount, we hold the trial judge erred in sentencing Brandt for a felony conviction. Accordingly, we

remand to the circuit court for sentencing on the misdemeanor.[10]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

TOAL, C.J., PLEICONES, KITTREDGE and HEARN, JJ., concur.

---

10. We need not address Brandt's argument regarding the trial judge's failure to conduct a "full and fair" restitution hearing or his claim that the amount of restitution was excessive given the parties informed this Court that they have reached a settlement as to restitution.