Chief Justice PLEICONES.
I dissent from the majority’s decision because in my view, the trial judge’s refusal to charge the legal principle contained in the requested charge was reversible error. Accordingly, I would reverse Marin’s conviction and sentence and remand for a new trial.
I agree with the majority that the language requested by Marin was a correct statement of law. However, in my opinion, the charge given did not encompass the charge requested, and, therefore, based on the evidence at trial, it was reversible error for the trial judge to refuse to give the requested charge. See State v. Brandt, 393 S.C. 526, 549, 713 *487 S.E.2d 591, 603 (2011) (“In reviewing jury charges for error, we must consider the court’s jury charge as a whole in light of the evidence and issues presented at trial” (quoting State v. Adkins, 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct.App.2003))); State v. Day, 341 S.C. 410, 418, 535 S.E.2d 431, 435 (2000) (finding a trial judge’s refusal to specifically tailor the self-defense charge to adequately reflect the facts and theories presented by the defendant is reversible error (citation omitted)); State v. Fuller, 297 S.C. 440, 443, 377 S.E.2d 328, 330 (1989) (holding a trial judge’s refusal to include an additional requested jury charge on self-defense is reversible error where the facts and circumstances presented at trial warrant such a charge). First, it is my opinion that Marin was entitled to a charge explaining that where a defendant is justified in using deadly force, the defendant may continue to use such force until the danger dissipates.[7] See State v. Hendrix, 270 S.C. 653, 661, 244 S.E.2d 503, 507 (1978) (holding a person justified in firing the first shot in self-defense may continue to shoot until the apparent danger to his life or body has ceased). Marin, who was employed as a newspaper marketing director and manager of a car rental company, testified he was being attacked from the backseat when he twice shot the victim out of fear for his safety, and evidence presented at trial corroborated Marin’s version of events. Specifically, law enforcement testified skid marks and debris in the roadway were consistent with damage observed to the front of Marin’s vehicle corroborating Marin and Jimenez’s statements after the incident that there was a struggle over control of the steering wheel; the crime scene investigator found the victim’s body slumped over the center console of Marin’s vehicle between the driver’s and front passenger’s seat, with his left arm positioned palm-up in the driver’s seat, and with one foot on the backseat floorboard *488 and one foot on the backseat;[8] and the pathologist who performed the autopsy on the victim testified there were two gunshot wounds to the head — one fatal, and one potentially fatal — and it was not possible to determine which gunshot wound came first, only that the gunshots “came close together,” and both were fired at extremely close range. As to why Marin shot the victim twice, Marin testified at trial, “It happened real fast — boom, boom.”
In closing argument, the solicitor argued, “Ladies and gentlemen, I submit this is malice. Two shots, not one, two shots to the back of the head.” The solicitor further argued, “Would a reasonable person shoot someone twice in the back of the head?” While the solicitor’s statements do not singularly require the trial judge give the requested charge, in my view, the statements effectively highlight the importance of the charge requested in light of the facts of this case. Additionally, in my opinion, it is worth noting that after the trial judge gave the original jury charge, the jury requested additional guidance as to malice and voluntary manslaughter, and the trial judge again refused to include Marin’s requested verbiage regarding the principle of “continuing to shoot.”[9] See State v. Blassingame, 271 S.C. 44, 46-47, 244 S.E.2d 528, 530 (1978) (finding that when a jury submits a question to the court following a jury charge, it is reasonable to assume the jury is focusing “critical attention” on the specific question asked, and that the information relayed by the trial judge to the jury is given “special consideration.”).
Second, in my view, the language cited by the majority as encompassing Marin’s requested charge — “a person may use such force as is reasonably necessary even to the point of taking human life where such is reasonable” — merely explains that a defendant may take a human life in self-defense, and utterly fails to further define for the jury reasonable self-defense conduct under the facts of this case. In my opinion, the charge requested by Marin goes a step further, and *489 elucidates reasonableness in this case, i.e., a person entitled to exercise self-defense may continue using deadly force until the perceived danger has dissipated. Accordingly, in light of the solicitor’s closing argument, I find the language cited by the majority is not remotely sufficient to explain or clarify for the jury that the two shots fired by Marin were not necessarily indicative of malice. See Brandt, 393 S.C. at 549, 713 S.E.2d at 603; Day, 341 S.C. at 418, 535 S.E.2d at 435; Fuller, 297 S.C. at 443, 377 S.E.2d at 330 (1989). Thus, I do not find the jury charge included the requested, applicable principle of self-defense.
For the reasons given above, I would find the trial judge committed reversible error by failing to charge the principle embodied in the requested “continuing to shoot” language, reverse Marin’s conviction, and remand to the lower court for a new trial.

. I find the specific language "continuing to shoot” alarmingly close to an impermissible charge on the facts. See S.C. Const, art. V, § 21 (“Judges shall not charge juries in respect to matters of fact, but shall declare the law.”); State v. Hartley, 307 S.C. 239, 241, 414 S.E.2d 182, 183-84 (Ct.App.1992). Regardless, Marin’s requested charge was based on a correct principle of law, and the trial judge was required to charge that principle to the jury. See Brandt, 393 S.C. at 549, 713 S.E.2d at 603 (holding when a party requests the trial judge charge a correct and applicable principle of law, the court must charge it (citation omitted)).

. The crime scene investigator further found no indication the victim’s injuries were sustained in the backseat or any other location other than where his body was positioned between the front seats of the vehicle.

. The jury returned its verdict approximately one hour after the trial judge provided the additional instruction.